**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

**v.**

**UNIVERSITY CLUB OF CHICAGO, Defendant.**

**No. 90 C 1849.**

United States District Court, N.D. Illinois, E.D.

April 25, 1991.

Dana Hutter, E.E.O.C., Chicago, Ill., for plaintiff.

Sandra J. Tyra, Steven Adelman and Faith Lesley Kalman, Keck, Mahin & Cate, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

HART, District Judge.

The Equal Employment Opportunity Commission ("EEOC") contends that defendant University Club of Chicago (the "University Club") must file certain reports (EEO–1 Reports) that are required to be filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and applicable EEOC regulations. Title VII empowers the EEOC to require "every employer ... subject to this title ... [to] make such reports ... as the Commission shall prescribe by regulation." 42 U.S.C. § 2000e–8(c). EEOC regulations require certain employers to file annual EEO–1 Reports, which include information regarding the employer's work force, including the racial and ethnic identity of its employees. 29 C.F.R. §§ 1602.7, 1602.13.

Under Title VII, "the term 'employer' means a person engaged in an industry affecting commerce who has fifteen or

more employees ..., but such term does not include ....a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of the Internal Revenue Code of 1954." 42 U.S.C. § 2000e(b)(2). There is no dispute that the University Club employs 15 or more employees, that it is not a labor organization, and that it is exempt from taxation under the Internal Revenue Code. The dispute in this case is whether the University Club is exempted from the coverage of Title VII because it is a bona fide private membership club. The parties have both moved for summary judgment, contending there are no disputed facts in the case, only a disputed legal question as to whether those facts meet the legal definition of a private membership club. The undisputed facts are as follows.[1]

The University Club is a nonprofit corporation, incorporated in Illinois, that is exempt from federal taxation. The University Club occupies a 13–story building located at 76 East Monroe Street in downtown Chicago, and also uses space in an adjoining building. The University Club was founded in 1889 for the purpose of promoting literature and art. While it still sponsors some programs consistent with that purpose, members are not required to participate in any activities promoting literature or art. The University Club presently provides dining room and restaurant facilities, lodging facilities, athletic and exercise facilities, business and private meeting rooms, a library, display and gallery rooms, and rooms for receptions and parties.

The University Club admits members in a number of categories: resident, non-resident, director, privileged, foreign consular, foreign national, surviving spouse, military/service, and honorary. The Committee on Admissions has exclusive responsibility and authority for admitting resident and non-resident members.[2] As of June 30, 1990, the University Club had 1,953 resident members, 480 non-resident members, and 720 members in the other categories—a total of 3,153 members. The University Club limits its membership to 2,150 resident members based on the number of people its facilities can accommodate. In the past, when the resident member limit was reached, the University Club continued to approve new members but did not inform them of their approval until there was room for additional members. No one has ever been rejected or asked to withdraw an application because of the ceiling on membership.

To qualify to be a resident or non-resident member, the applicant is required to have an undergraduate degree from a qualified university or college. The list of qualified universities and colleges has, on a few occasions, been modified to add the school of a new applicant. Applicants who do not have a college degree can be admitted under other categories. Applicants must complete a nomination form and obtain supporting letters from three to five members, and then are interviewed by one to three members of the Admissions Committee. There is no express requirement as to the length of time the sponsor must have known the applicant, nor is there any express requirement as to what must appear in the letters of support. Applicants must be 21 years of age, but need not possess an interest in literature or art; need not have any particular academic background other than the undergraduate degree; and need not have been previously involved in any clubs, societies, or other social organizations. The Admissions Committee generally does not conduct any additional investigation of the applicant. A Membership

---

**1.** The parties represented in open court that the issues in this case could be decided on summary judgment as there were no disputed material facts. The parties filed a joint stipulation of facts. However, each party also filed Local Rule 12(m) and 12(n) statements in which it adds additional facts and denies some facts asserted by the other party. The stipulation is treated as controlling; neither party may seek to raise a dispute inconsistent with the stipulation. As for additional facts, no material disputes remain that are supported by adequate documentation.

**2.** To be a resident member, the member must live or work within 40 miles of the University Club. The University Club, however, does not seek to verify whether this requirement is satisfied.

Development Committee assists persons who do not know enough current members by acquainting them with persons who can be sponsors.

In recent years, approximately 175 new members have been admitted each year. Since November 1986, no applicant has been voted down by the Admissions Committee. In the same time period, two or three persons were asked to withdraw their applications, one because the applicant had a reputation as a poor sport on the squash court and one or two others because they did not have an undergraduate degree. Thus, over 99% of applicants have been approved. As defendant contends, this could simply be because the sponsors screen out inappropriate applicants. However, no evidence is presented to support this contention. Instead, defendant has stipulated that the President of the University Club has actively encouraged members to nominate new members because it shows continued prestige of the organization and because the club has a financial need for the steady stream of revenues produced by new membership fees. Also, in the past several years, no member has been expelled and the only suspensions have been based on nonpayment of dues.

Non-members are permitted to use the University Club's facilities. With minor restrictions, family members are allowed to use the facilities. Guests of members are allowed to use the facilities regardless of age, education, or any other qualification. This includes the issuance of guest cards for unrestricted use of the facilities regardless of whether the guest is accompanied by a member. Guest cards, however, are limited to two days for local guests and two weeks for out-of-town guests with additional yearly limitations for both categories. Members of approximately 60 reciprocating clubs throughout the country can also obtain guest cards. Persons with guest cards may host events at the University Club. There is no requirement that any member attend the event. Guests may use the University Club's dining facilities and lodging facilities. Use of the lodging facilities is promoted by advertisements in the dining facilities aimed at both members and guests. Guests pay a higher rate than members for the lodging facilities, a rate that is set to be comparable to equivalent hotel facilities in Chicago.

University Club members host various social events and business meetings without any limitation on the number of guests invited other than the capacity of the facility being used. The purported sponsoring member need not directly book the event and when a guest books the event, the University Club's staff is not required to seek verification from the member named as the sponsor. The cost of sponsored events need not be billed directly to the sponsoring member, but may be billed to a third party who is the actual sponsor of the event. Any University Club member may sponsor parties for college or university alumni with no requirement that the member attend or even be an alumnus of the school.

The University Club's manager, who is not a member of the University Club, annually hosts the Club Managers Association of America in connection with Chicago's restaurant show and convention. The Catering Executive Club has also held a dinner at the University Club that was hosted by another University Club employee who was not a member.

For the past five to six years, a University Club member has sponsored the activities of an auction house which hosts four wine auctions and tastings per year. It is an invitation only event with the auction house determining whom it will invite. Its invitations are not limited to University Club members and no member may attend unless the member received an invitation.

For the past four to five years, three electronics firms have used facilities at the University Club during Chicago's annual electronics show. They have displayed their equipment at the University Club with visits to the displays being limited to persons invited by the electronics firms. The University Club also regularly hosts amateur and professional squash tournaments sponsored by local and national squash organizations. Tournament partici-

pants may use the athletic and lodging facilities. No evidence is presented that these persons must be issued guest cards to make use of the facilities. This event, like much of the other use by guests, is a revenue generating event for the University Club.

In 1986, the EEOC issued a policy statement setting forth a revised definition of a bona fide private membership club. EEOC Compl. Man. (BNA) N:3171–73 (July 1986) (Policy Statement N–915) ("Compl. Man."). Although defendant disagrees with the particular application of this policy statement to its situation, it does not dispute that the general principles contained in this policy statement accurately state the law. The policy statement was intended to be consistent with *Quijano v. University Federal Credit Union,* 617 F.2d 129 (5th Cir.1980). As *Quijano* makes clear, "private membership club" as used in Title VII is a narrow term. *Id.* at 132. Clubs that may be considered "private clubs" as that term is used in everyday conversation do not necessarily qualify as private membership clubs under Title VII's narrow definition.

Under Policy Statement N–915, three requirements must be satisfied for a bona fide private membership club. The organization must be (1) a club in the ordinary sense of the word, (2) private, and (3) require meaningful conditions of limited membership. Compl.Man. at 3172. The EEOC will consider the following factors with respect to the second element: "(1) the extent to which [the club] limits its facilities and services to club members and their guests; (2) the extent to which and/or the manner in which it is controlled or owned by its membership; and (3) whether and, if so, to what extent and in what manner it publicly advertises to solicit members to promote the use of its facilities or services by the general public." *Id.* at 3173. Additional factors may also be considered. In determining whether there are meaningful conditions of limited membership, "the Commission will consider both the size of the membership, including the existence of any limitations on its size, and the membership eligibility requirements." *Id.* The burden is on defendant to prove

that it is a private membership club. *Quijano,* 617 F.2d at 132.

The University Club does not qualify as a private membership club because it is not private and it does not have meaningful conditions of limited membership. The uncontested facts show that the University Club permits guests to have essentially the same privileges as members. The uncontested facts also show that the persons the University Club designates as guests are not guests in the usual sense of the word. For example, there is no requirement that the "guest" be accompanied by his or her "host." Instead, the record indicates that members of the general public would have little problem finding some member of the University Club to be the formal sponsor of the guest regardless of any preexisting social relationship. Also, the University Club permits guests to have unfettered discretion in inviting further guests to the University Club, regardless of the secondary guest having any relationship with the sponsoring member. This includes permitting profit-making businesses to use the University Club's facilities to promote the businesses' pecuniary interests regardless of any pecuniary interest of the sponsoring member and without permitting the guest's use of the facilities to be open to the general membership. The University Club has also permitted employees to host events without going through the formalities of having a designated sponsor. Furthermore, the undisputed facts show that at a number of events, persons whom defendant characterizes as guests are permitted to use the facilities without being either accompanied by a sponsoring member or going through the formality of obtaining a guest card. The University Club's broad and open guest policy shows that it is not private, as that term is used in Title VII and the policy statement.

Defendant has also failed to show that it has any meaningful limitation for admitting new members. The only membership limitations that appear to be enforced to any extent are the requirement that resident and non-resident members have undergraduate degrees and be at least 21 years

old. Beyond this, the University Club seeks to attract as many new members as possible, with financial motivations being one reason for seeking a substantial number of new members each year. Given that few applicants are ever turned down for membership and that no evidence is presented that applicants are significantly prescreened by sponsoring members, it cannot be found on the evidence presented that any meaningful limitations are placed on selecting members. This is true regardless of any formal or informal sponsorship and interview procedures that are used. For these reasons, plaintiff has also failed to satisfy the third element of the EEOC's definition of a bona fide private membership club.

This ruling should not be read as criticism of the current operations of the University Club. Rather the club does not fit within the narrow definition of a private membership club contained in the applicable statute. Today, the University Club is a private business and recreation club. As such, it should file the reports required of such organizations in order to furnish oversight information concerning equal employment opportunities in its work force.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff and against defendant enjoining the University Club of Chicago, its officers, agents, employees, and all persons in active concert or participation with it from failing and refusing to comply with the reporting requirements of 42 U.S.C. § 2000e–8(c) and 29 C.F.R. Part 1602. The University Club of Chicago is further ordered to file EEO–1 Reports for the years 1986 through 1990 within thirty days from the date of entry of this judgment.