Jack L. KELSEY, Plaintiff,

v.

UNIVERSITY CLUB OF ORLANDO, INC., Defendant.

No. 93–0991–CIV–ORL–18.

United States District Court, M.D. Florida, Orlando Division.

March 10, 1994.

Marcus Lauren Snow, Jr., O'Brien & Hooper, P.A., Tampa, FL, for plaintiff.

Leo Peter Rock, Jr., Gray, Harris & Robinson, P.A., Orlando, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff brings this action pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213 (Supp. II 1990). In his complaint, plaintiff alleges that defendant terminated his employment on the basis of plaintiff's disability. Defendant filed a motion to dismiss, in which defendant maintains that it is a bona fide private membership club, and thus, exempt from the ADA requirements. Plaintiff responded in opposition to defendant's motion. Because the parties relied on evidence outside the complaint, the court converted the motion to dismiss into a motion for summary judgment,

allowed the parties ten days to file evidence within the purview of Federal Rule of Civil Procedure 56, and referred the motion to the United States Magistrate Judge for preparation of a report and recommendation. In his report and recommendation, the Magistrate Judge recommends that the court deny the motion for summary judgment because factual disputes exist as to whether defendant is private and whether defendant requires meaningful conditions of limited membership. Defendant filed objections to the report and recommendation. Based on a review of the case file and relevant law, the court finds that no genuine issue of material fact exists as to whether defendant is a bona fide private membership club, and thus, defendant is entitled to summary judgment.

## I. Facts

In February 1986, defendant hired plaintiff as a barber. In November 1992, plaintiff sustained a heart attack, was diagnosed with coronary heart disease, and underwent a coronary bypass. On January 1, 1993, defendant terminated plaintiff's employment. Plaintiff alleges that defendant terminated him because of his disability and refused to reinstate plaintiff in any capacity, with or without reasonable accommodation. (Compl. ¶¶ 13–18.)

Defendant became a Florida not-for-profit corporation in 1931. (Eberts Aff. 12/22/93 Attach. 1.) According to its charter, defendant's objectives are to promote higher education, including financial support, and improve its members' literary appreciation and to own and operate a club house in furtherance of the purpose of the corporation. (Eberts Aff. 12/22/93 Attach. 2 Charter Art. II.) Defendant provides for membership contributions to a scholarship fund, but the evidence is disputed as to the percentage of members who actually contribute to the fund. (Voorhees Aff. ¶ 10; Wong Aff. ¶ 2.) Defendant's facilities include meeting or party rooms, athletic facilities, a dining room, library, barber shop, and card and billiards room. (McNair Aff. ¶ 4.) Members pay dues, fees, and assessments to support defendant, meet annually and for special meetings, vote on applications for membership by secret ballot, and have full use of defendant's facilities. (Eberts Aff. 12/22/93 Attach. 3 By–Laws.; McNair Aff. ¶ 3.)

Defendant's guest policy requires members to accompany their guests when guests use defendant's facilities. (Eberts Aff. 12/22/93 ¶ 4, Attach. 4 House Rule 1.) Plaintiff identifies three non-members who used the barber shop without being accompanied by a member and states that a member instructed plaintiff to provide services to the member's employees who were not members and not accompanied by a member. In each instance, plaintiff billed the account of a member for the services provided to non-members. (Kelsey Aff. ¶ 3; Voorhees Aff. ¶¶ 14–15; Wong Aff. ¶ 5.) The evidence shows that defendant allowed plaintiff and two other employees to use defendant's facility without membership supervision. (Kelsey Aff. ¶ 4; Voorhees Aff. ¶ 13; McNair Aff. ¶ 7(c); Eberts Aff. 1/28/94 ¶ 4.)

Defendant's rules provide for guest cards to be issued to non-resident guests. A guest card is valid for ten days and must be signed by a member. A guest card allows a non-resident guest to use the facilities without member supervision. However, a member must be responsible for the guest and the guest's expenses are billed to the member. (Eberts Aff. 12/22/93 Attach. 4 House Rule 1.) Defendant has issued one guest card in the past five years. (McCree Aff. ¶ 8.) Defendant does not allow guests to invite guests to use its facilities. (McNair Aff. ¶ 6.)

According to defendant's rules, no civic, social or business club or any organization may use the facilities. Defendant allows members to sponsor social events hosted by non-members, but requires the sponsor's presence at the social event. Defendant's rules prohibit private parties of any kind, member or non-member, during regular club hours. (Eberts Aff. 12/22/93 Attach. 4 House Rule 9.) Defendant places no limit on the number of guests at a social event except the capacity of the facilities being used. Defendant receives a thirty percent profit on non-member social events, which provides less than one percent of defendant's gross revenues. (Voorhees Aff. ¶ 8; Wong Aff. ¶ 3.) Plaintiff maintains that defendant allows twelve to fourteen non-member events annu-

ally, whereas defendant contends that it has had only four non-member events in the past three years. (Kelsey Aff. ¶ 5; McNair Aff. ¶ 7(d); Wong Aff. ¶ 3.) Plaintiff submits evidence of one non-member social event which the sponsor did not attend. (Voorhees Aff. ¶ 9.)

To meet its financial needs, defendant encourages members to recruit new members. (Voorhees Aff. ¶ 12; McNair Aff. ¶ 8(d); McCree Aff. ¶ 5.) To be considered for regular membership, a person proposed for membership must have a degree from an approved college or university, be thirty-six years of age, reside or maintain a principal place of business within twenty-five miles of defendant's facilities for at least twelve consecutive months preceding the person's proposal, and have five member sponsors. (Eberts Aff. 12/22/93 Attach. 3 By–Laws.) The sponsors must provide information as to how long and in what capacity a sponsor has known an applicant. (McNair Aff. ¶ 3; McCree Aff. ¶ 7.) Defendant posts proposed members' applications in the club house for comment from the members and mails notices of applicants to its members. In addition to regular membership, defendant has special, non-resident, intermediate, honorary, and special honorary memberships. Only regular, special, and honorary members vote on defendant's affairs. Defendant limits the total number of regular, special, and intermediate members to 700 individuals. (Eberts Aff. 12/22/93 Attach. 3 By–Laws.) In 1990, defendant had 678 members; in 1991, 579 members; and in 1992, 505 members. (Wong Aff. ¶ 2.) Plaintiff submits evidence that from 1990 through 1992, seventy-five individuals were proposed for membership and defendant rejected four of the individuals. (Voorhees Aff. ¶ 11.)

## II. Legal Discussion

### A. *Standards of Review*

#### 1. *Report and Recommendation.*

Upon submission of a magistrate judge's report and recommendation on a motion for summary judgment, the court makes a de novo determination on the record of any portion of the magistrate judge's disposition to which a party has made a specific, written objection. Fed.R.Civ.P. 72(b); *E.E.O.C. v. Harris Chernin, Inc.*, 767 F.Supp. 919, 922 (N.D.Ill.1991), *aff'd in part, reversed in part on other grounds,* 10 F.3d 1286 (7th Cir. 1993). The court "must look at all the evidence contained in the record and retains final authority over determination of the dispositive motion." *Harris Chernin,* 767 F.Supp. at 922. The court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge. Fed. R.Civ.P. 72(b); L. Rule 6.02(a), M.D.Fla.

#### 2. *Summary Judgment.*

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The moving party may rely solely on its pleadings to satisfy this burden. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53; Fed.R.Civ.P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

B. *Report and Recommendation*

   1. *Definition of Bona Fide Private Membership Club.*

The ADA adopts the remedies set forth in Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e–17 (1988). *See* 42 U.S.C. § 12117 (referencing, among other provisions, 42 U.S.C. §§ 2000e–5). Both the ADA and Title VII exempt bona fide private membership clubs from the statutory prohibitions by providing that the term "employer" does not include "a bona fide private membership club (other than a labor organization) that is exempt from taxation under section 501(c) of Title 26." *See* 42 U.S.C. § 12111(2), (5)(B) (ADA exclusion); 42 U.S.C. § 2000e(b)(2) (Title VII exclusion). The parties do not dispute that defendant is exempt from taxation under section 501(c) and that defendant is not a labor union. Therefore, the only issue before the court is whether defendant qualifies as a bona fide private membership club. To qualify as a bona fide private membership club, defendant must show that it (1) is a club in the ordinary sense of the word; (2) is private as opposed to public; and (3) requires some meaningful conditions of limited membership. *Policy Statement on Private Club Exemption,* EEOC Compl. Man. (BNA) No. N–915, at N:3171 (July 22, 1986) (recognizing that the court in *Quijano v. University Fed. Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980), required an additional factor that the organization is legitimate as opposed to a sham, but stating that if a defendant satisfies the other three factors, the defendant is a legitimate organization).

   2. *Application of the Definition.*
      *(a) Club in the Ordinary Sense of the Word.*

■ In his report and recommendation, the magistrate judge found that defendant qualifies as a club in the ordinary sense of the word. The undisputed evidence also shows that the members jointly support defendant, meet periodically, confer membership by secret ballot, and have the privilege of use of defendant's facilities. Plaintiff made no objections to, and the record supports, the magistrate judge's findings. Accordingly, the court concludes that defendant is a club in the ordinary sense of the word and a legitimate organization as opposed to a sham. *See* EEOC Compl. Man. (BNA) No. N–915, at N:3172–73 (citing the definition of club from the *Quijano* opinion, which quoted *Webster's Third International Dictionary of the English Language* ).

      *(b) Private.*

■ In accordance with the policy statement on the private club exemption, the magistrate judge considered the following factors to determine whether defendant is private:

   (1) the extent to which it limits its facilities and services to club members and their guests;

   (2) the extent to which and/or the manner in which it is controlled or owned by its membership; and

   (3) whether and, if so, to what extent and in what manner it publicly advertises to solicit members or to promote the use of its facilities or services by the general public.

*Id.* at N:3173. The magistrate judge concluded that a factual dispute exists as to whether defendant is private. To reach his conclusion, the magistrate judge relied primarily on *E.E.O.C. v. University Club of Chicago,* 763 F.Supp. 985 (N.D.Ill.1991), in which a district court found that the University Club of Chicago (Chicago club) was not private because the Chicago club allowed non-members to use its facilities without being accompanied by a member and to host social functions with the number of guests limited only by the capacity of the facility and because the Chicago club actively solicited members through advertisement. *University Club of Chicago,* 763 F.Supp. at 988.

Based on a review of the case file, the court finds that plaintiff has submitted evidence that defendant, like the Chicago club, limits the number of guests at social events

to the capacity of the facilities being used, issues guest cards to non-members, profits from social events, and encourages its members to recruit new members. However, the limited extent to which defendant allows non-members to use its facilities distinguishes defendant's guest policy from the Chicago club's open guest policy.

In the *University Club of Chicago,* the court concluded that the Chicago club, which has more than 3000 members, permits guests to have essentially the same privileges as members based on the uncontested evidence that the Chicago club issues guest cards for unrestricted use of the facilities regardless of whether the guest is accompanied by a member, allows guest cardholders to host events at the facilities and use the dining and lodging facilities, and promotes use of its lodging facilities by advertisements in the dining facilities aimed at both members and guests. *Id.* at 987–88. For social events, the Chicago club allows guests to directly book events and bills guest hosts directly. *Id.* at 987. The Chicago club also permits profit-making businesses to use its facilities for the businesses' pecuniary interests regardless of the sponsoring member's pecuniary interest and to the exclusion of members that businesses do not invite. *Id.* at 987–88. For example, the Chicago club has allowed non-members to host the following events: the Club Managers Association of America hosted annually by the Chicago club's manager, a dinner for the Catering Executive Club hosted by a Chicago club employee, four invitation-only wine auctions and tastings hosted annually by an auction house, invitation-only electronic equipment displays hosted by three electronic firms, and amateur and professional squash tournaments hosted by local and national squash organizations. *Id.*

In contrast, plaintiff provides evidence of one guest's social event that a member sponsor failed to attend, of approximately four non-members who received barber services without being accompanied by a member, of three employees who used defendant's athletic facilities without member supervision, and of one guest card that defendant issued to a non-resident. This evidence shows only isolated accounts of incidents when members

failed to abide by defendant's rules. Moreover, plaintiff provides no evidence that defendant allows guests unfettered use of its facilities, promotes use of its facilities through advertisements aimed at non-members, permits profit-making businesses to use its facilities to the exclusion of uninvited members, or allows employees to host social or business events. Additionally, the court notes that unlike the Chicago club, defendant prohibits private parties during regular club hours and bills members for their guests' expenses. Therefore, even viewing the evidence in a light most favorable to plaintiff, the court finds that unlike the Chicago club's open guest policy, defendant has a limited guest policy, which its members have followed except in isolated incidents. Accordingly, defendant has shown that it is a private club. To hold otherwise would make the criteria for a private club a definition without meaning, an exemption under Title VII and ADA with no organization able to qualify.

### (c) *Meaningful Conditions of Limited Membership.*

■ To meet the requirement of meaningful conditions of limited membership, defendant must show that it limits its membership by restricting the size of its total membership and by according membership only to individuals found personally accepted by its members. EEOC Dec. No. 85–2, 1984 WL 23401 at *3 (E.E.O.C. Oct. 26, 1984); *see* EEOC Compl.Man. (BNA) No. N–915, at N:3173 (referencing EEOC Dec. No. 85–2). The magistrate judge found a factual dispute whether defendant requires meaningful conditions of limited membership based on plaintiff's evidence that defendant encourages its members to actively recruit new members and that from 1990 through 1992, defendant accepted ninety-five percent of the applicants as members. The magistrate judge noted the similarities between defendant's membership requirements and the Chicago club's requirements. Furthermore, plaintiff submits evidence that like the Chicago club, defendant is financially motivated to attract new members and has accepted most of the applicants as members.

The court finds, however, that the *University Club of Chicago* court relied, in part, on the Chicago club's failure to present evidence that its sponsoring members significantly prescreened applicants. *See University Club of Chicago,* 763 F.Supp. at 986–87, 989 (finding that the Chicago club had no express requirement as to the length of time the sponsor must have known the applicant and as to what must appear in a sponsor's letter, that the admissions committee generally did not investigate an applicant beyond an interview with the applicant, and that a membership development committee acquainted applicants who needed sponsors with members). In contrast, defendant submits undisputed evidence that defendant informs its members of persons applying for membership before voting on an applicant and requires sponsoring members to confirm that an applicant meets defendant's qualifications for membership and to provide a basis for the sponsoring member's knowledge of the applicant and the applicant's suitability for membership, including character, reputation, and financial responsibility. Furthermore, the record presents no evidence that defendant determines the size of its membership according to the number of people its facilities can accommodate. *Cf. id.* at 986 (noting that the Chicago club limits its membership based on the number of people its facilities can accommodate). Therefore, the court finds that defendant imposes meaningful conditions of limited membership by restricting the size of its membership to 700 and selecting members based on considerations of personal association.

### III. Conclusion

The court finds no genuine issue of material fact that would justify bringing this lawsuit to trial. Defendant has shown that it qualifies as a bona fide private membership club, and thus, is exempt from the ADA requirements. Accordingly, the court rejects the magistrate judge's recommendation, (Doc. 17), and GRANTS summary judgment in favor of defendant. (Doc. 4.)

It is **SO ORDERED.**