**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**The CHICAGO CLUB, Defendant.**

No. 92 C 6910.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1995.

Jean Powers Kamp, Dana Richard Hutter, John C. Hendrickson, Pamela Sue Moore–Gibbs, E.E.O.C., Chicago, IL, for plaintiff.

Jeri Anne Lindahl–Garcia, Michael F. Rosenblum, Mayer, Brown & Platt, Jeffrey S. Fowler, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for defendant.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

Plaintiff, the Equal Employment Opportunity Commission, filed a complaint seeking declaratory and injunctive relief compelling defendant, The Chicago Club, to comply with provisions of Title VII of the Civil Rights Act of 1964 requiring the filing of reports known as EEO–1 reports and the posting of certain information in the workplace. 42 U.S.C. §§ 2000e–8(c) and 10. Both parties moved for summary judgment. The assigned magistrate judge issued a report and recommendation on January 30, 1995, recommending that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted. Plaintiff and defendant have filed objections to the magistrate judge's January 30, 1995, report and recommendation.

Plaintiff is dissatisfied with the result recommended by the magistrate judge and objects that the magistrate judge erred (1) by not limiting Title VII's bona fide private membership club exemption to organizations with associational values that would be threatened if required to comply with Title VII, (2) in concluding that defendant is private, (3) in concluding that defendant maintains meaningful and selective conditions of limited membership, and (4) in concluding that defendant operates as a traditional club. Defendant, on the other hand, is satisfied with the magistrate judge's recommended result. However, defendant objects to the report and recommendation on the ground that the magistrate judge erred in her conclusion that defendant has the burden of proving that it is a private membership club exempt from the requirements of Title VII.

When a magistrate judge recommends a disposition of a motion for summary judgment, a party may object in writing to that

recommended disposition. 28 U.S.C. § 636(b)(1); FRCP 72(b). The district judge is required to make a de novo determination of any portion of the magistrate judge's proposed disposition to which a party has made specific written objection. 28 U.S.C. § 636(b)(1); FRCP 72(b). This court must therefore make a de novo determination of those portions of the report and recommendation to which the parties have objected.

The report and recommendation contains a lengthy recitation of the facts in this case, which will not be repeated in this opinion. Instead, this opinion will proceed to a discussion of the issues raised in the parties' objections to the report and recommendation.

Plaintiff maintains that defendant is an employer for purposes of Title VII of the Civil Rights Act of 1964 (Title VII), and so is subject to both Title VII and plaintiff's regulations thereunder. Defendant maintains that it is not such an employer. Title VII defines the term "employer" in part:

For the purposes of this subchapter—

. . . .

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees ..., but such term does not include ... (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26....

42 U.S.C. § 2000e. The narrow and dispositive issue disputed by the parties is whether defendant is a bona fide private membership club for purposes of this statute. The magistrate judge concluded that defendant is a bona fide private membership club, and so not an employer for Title VII purposes.

Defendant's objection to the recommended disposition raises the procedural question of which party has the burden of proof on the issue of whether defendant is a bona fide private membership club. The magistrate judge concluded that defendant had the burden of proof, the issue being one of exemption from the general definition raised by way of affirmative defense. Defendant maintains that this conclusion was incorrect; that whether defendant is an employer is a jurisdictional issue on which plaintiff has the burden of proof.

■ Defendant recognizes that several reported cases under Title VII have decided to the contrary, but maintains that these cases did not correctly analyze the issue. It appears to the court that the reported cases and the magistrate judge's recommendation are correct on this issue; that the burden of proof on whether defendant is a bona fide private membership club is defendant's to bear. See *Quijano v. University Federal Credit Union,* 617 F.2d 129, 131 (5th Cir. 1980); *EEOC v. University Club of Chicago,* 763 F.Supp. 985, 988 (N.D.Ill.1991).

Plaintiff's first objection raises an issue of statutory construction. Plaintiff contends that the magistrate judge's report and recommendation errs in failing to interpret the private-membership-club exception to Title VII's definition of "employer" in light of the legislative history of the Civil Rights Act of 1964, which plaintiff maintains requires that the exception be interpreted to apply "only where treating employees in a manner consistent with Title VII would interfere with associational rights of members of the organization."

The legislative history to which plaintiff cites concerned Title II, rather than Title VII. It is contained in House Report 88–914, in which it was stated:

> It is argued that the enactment of title II invades rights of privacy and of free association.... Turning to the 'freedom of association' contention, there is little basis for urging this principle in behalf of owners of business who regularly serve the public in general. This 'freedom' can only be claimed by the party of interest—the owner, not the customer; and the owner of a public establishment, as above mentioned, is hardly in a position to raise it. Moreover, *where freedom of association might logically come into play as in cases of private organizations, title II quite properly exempts bona fide private clubs and other establishments.* Finally, it must be said that even if freedom of association is considered to be affected to some degree by the application of title II, there is no question that the courts will uphold the

principle that the right to be free from racial discrimination outweighs the interest to associate freely where those making the claim of free association have knowingly and for profit opened their doors to the public.

H.R.Rep. No. 88–914, 88th Congress, 2d Sess. (1963), reprinted in 1964 USCCAN 2391 (emphasis added). Plaintiff's claim that the private-membership-club exception must be interpreted to apply "only where treating employees in a manner consistent with Title VII would interfere with associational rights of members of the organization" is based upon the underlined statement in the quotation above. As plaintiff itself puts it:

The EEOC therefore asserts that the reason these exemptions exist in Titles II and VII is to protect the associational values of persons affiliated with certain organizations.... Thus, the EEOC argued that, in accordance with this underlying basis for the Title VII *bona fide* private membership club exemption, the exemption only applies where treating employees in a manner consistent with Title VII would interfere with the associational rights of members of the organization.

There is a great deal wrong with plaintiff's use of legislative history.

First, there is nothing in the statute itself suggesting that the "bona fide private membership club" language is incomplete in not also including a requirement that associational values require the exemption nor is there any ambiguity over whether associational values should be taken into consideration in determining whether an organization is a "bona fide private membership club." In short, there is nothing in the language that Congress used in the statute that would support the interpretation plaintiff gives to the statute.

Plaintiff's argument is based upon a passage from a House Report that, assuming plaintiff correctly understands it, would constitute at most a legislative statement of the broad purposes of the bona fide private membership club exception to Title VII's definition of an employer. However, the United States Supreme Court has condemned just such methods of statutory interpretation.

[M]ost impermissibly, the Court of Appeals relied on its understanding of the broad purposes of the [statute].... But no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law.

*Rodriguez v. United States,* 480 U.S. 522, 525–26, 107 S.Ct. 1391, 1393–94, 94 L.Ed.2d 533 (1987). Also, the Seventh Circuit, on numerous occasions, has addressed the method of statutory interpretation utilized by plaintiff:

Every statute has a stopping point, beyond which, Congress concluded, the costs of doing more are excessive—or beyond which the interest groups opposed to the law were able to block further progress. A court must determine not only the direction in which a law points but also how far to go in that direction.

*Stomper v. Amalgamated Transit Union, Local 241,* 27 F.3d 316, 320 (7th Cir.1994).

The district court subordinated the language of [the statute] to a purpose imputed to that language. Yet statutes—more accurately, the persons who wrote and voted for the statutes—often have multiple purposes. Courts enforce not these purposes in the abstract but the rules embedded in the language, which may track the purposes only imperfectly.... Knowing the purpose behind a rule may help a court decode an ambiguous text ... but first there must be some ambiguity.... Subject to the standard proviso about absurd results, when the statute itself resolves the problem at hand that is an end to matters....

*National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705, 707 (7th Cir.1994) (citations omitted).

One can always do "more" in pursuit of a goal, but statutes have limits. You cannot discover how far a statute goes by observing the direction in which it points. "Find-

ing the meaning of a statute is more like calculating a vector (with direction and length) than it is like identifying which way the underlying 'values' or 'purposes' point (which has direction alone)...."

*NAACP v. American Family Mutual Insurance Company*, 978 F.2d 287, 298 (7th Cir. 1992) (discussing the interpretation of Title VIII of the Civil Rights Act of 1968) (citations omitted) (quoting *In re Erickson*, 815 F.2d 1090, 1094 (7th Cir.1987)).

> Statutory rules frequently differ from the goals animating their promoters.... Disappointment with the results may supply a good reason for Congress to change the law; it does not provide a reason for a court to change the law.

*Continental Can Company, Inc. v. Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund*, 916 F.2d 1154, 1159–60 (7th Cir.1990). See also, e.g., *Hrubec v. National Railroad Passenger Corporation*, 49 F.3d 1269 (7th Cir.1995); *Contract Courier Services, Inc. v. Research and Special Programs Administration, United States Department of Transportation*, 924 F.2d 112, 115 (7th Cir.1991); *Amanda Acquisition Corporation v. Universal Foods Corporation*, 877 F.2d 496, 503 (7th Cir.1989); *Covalt v. Carey Canada Inc.*, 860 F.2d 1434, 1439 (7th Cir.1988). Plaintiff's reliance upon the broad purposes of the private-membership-club exception to Title VII's definition of employer to conclude, without any basis in the provisions of the language enacted by Congress, that the exception only applies where it would interfere with associational rights of the members of an organization is reason enough to reject plaintiff's interpretation of the statute.

Even if plaintiff's were an appropriate method of statutory interpretation, the legislative history cited would not support plaintiff's interpretation of the statute.

As plaintiff notes, the legislative history cited is for Title II and not for Title VII. Plaintiff claims that this is appropriate because:

> [T]he exemption for *bona fide* private membership clubs contained in Section 701(b) of Title VII is patterned after a similar exemption contained in Title II of

the Civil Rights Act of 1964, 41 U.S.C. § 2000a(e). With this the Report and Recommendation agrees. Report and Rec. at 23–24.

The statement that the Report and Recommendation agrees that the exemption in Title VII "is patterned after a similar exemption contained in Title II" is not exactly true. All the Report and Recommendation says is that "[a] similar exemption for private clubs is found in Title II of the Civil Rights Act, which prohibits discrimination in places of public accommodation." Also, although similar in certain respects, the two exemptions are quite different in others. The Title II exemption reads:

> The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public, except to the extent that the facilities of such establishment are made available to the customers or patrons of an establishment within the scope of subsection (b) of this section.

42 U.S.C. § 2000a(e). Thus, the Title II exemption is available to a "private club or other establishment not in fact open to the public" while the Title VII exemption is available only to a "private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26." 42 U.S.C. § 2000e(b). The exemptions are obviously quite different in scope, yet plaintiff in its objections to the report and recommendation does not address the differences between them.

Even more significant is the context in which the remark upon which plaintiff hangs its interpretation was made. The House Report was not stating the purposes of the Title II exemption; it was rather answering a right of association based objection to Title II. That the House Report cited the private club exemption as part of its· answer to the claim that Title II would violate rights of association is not at all inconsistent with the private club exception's having other purposes, perhaps even purposes that have nothing to do with high constitutional principle. For example, it may have been necessary to exempt private clubs in order to attract suffi-

cient votes for passage in the House of Representatives or the Senate, or possibly even to attract sufficient votes for cloture in the Senate. In other words, the private club exemption in Title II may have been the result of a compromise necessary to passage of the Civil Rights Act of 1964, and that compromise need not have been based upon the need to protect the right of association. It is impossible to rule such a history out based upon the highly inconclusive legislative history cited.

Finally, even if the exemptions in both Title II and Title VII were motivated solely by concern for the right of association, that does not mean that plaintiff's interpretation is necessarily correct. It is conceivable that Congress could have concluded that the right of association would be endangered by the application of Title II to almost any private club; that it would be further endangered by courts making the kind of determination plaintiff proposes (i.e., determining in each individual case whether the exemption was necessary to protect the right of association of a private club's members); and accordingly concluded that associational rights would be better protected by a bright line exemption for private clubs than by a case-by-case determination. Such a legislative purpose for the exemption would be consistent with the legislative history cited by plaintiff and would comport better with the language of the statute Congress enacted than would the purpose put forth by plaintiff.

■ Thus, plaintiff's argument that the exemption in Title VII for private membership clubs should be interpreted to apply only when the exemption is necessary to protect the associational rights of members is inconsistent with the language of the statute; is based on an improper method of statutory interpretation; and is not required by the legislative history cited. Defendant then is entitled to the exemption if it is "a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26". 42 U.S.C. § 2000e.

■ Plaintiff's remaining objections to the report and recommendation are to the conclusion that the undisputed material facts establish that defendant is a bona fide private membership club. The magistrate judge, plaintiff, and defendant (although defendant hedged some on the policy statement's applicability) all analyzed this question pursuant to the framework contained in the EEOC's Policy Statement N–915, *EEOC Compliance Manual* ¶ 2175 (CCH, 1993). Although defendant, as noted, did not fully commit itself to the applicability of Policy Statement N–915, and plaintiff's main argument that the bona fide private membership club exemption should only be applicable when the application of Title VII would violate the associational rights of a club's members is without any support in Policy Statement N–915, this court will follow suit and consider whether the undisputed facts establish that defendant meets the requirements set forth in Policy Statement N–915.

Under Policy Statement N–915:

[A]n organization is a bona fide private membership club if it:

(1) is a club in the ordinary sense of the word,

(2) is private; and

(3) requires meaningful conditions of limited membership.

... [M]eeting these three requirements results in concomitantly meeting the ... criterion of being ... "bona fide"....

*EEOC Compliance Manual* ¶ 2175 at 2316 (CCH, 1993). Plaintiff objects that the magistrate judge incorrectly concluded that defendant met each of these three requirements.

As to the first requirement, Policy Statement N–915 states:

[T]he Commission adopted the definition of the term "club" cited by the court in *Quijano* [*v. University Federal Credit Union*, 617 F.2d 129 (5th Cir 1980) (quoting Webster's Third New International Dictionary of the English Language at 430) ]:

an association of persons for social and recreational purposes or for the promotion of some common object (as literature, science, political activity) usually jointly supported and meeting periodically, membership in social clubs usually being conferred

356

by ballot and carrying the privilege of use of the club property.

*EEOC Compliance Manual* ¶ 2175 at 2316 (CCH, 1993).

Plaintiff argues that:

The EEOC does not dispute that Defendant exhibits some qualities of what is commonly understood to be a "club." However, Judge Hart's decision in *University Club* teaches that this is not enough. 763 F.Supp. at 988. . . .

(Citing *EEOC v. University Club of Chicago,* 763 F.Supp. 985, 988 (N.D.Ill.1991)). But Judge Hart did not say that the University Club of Chicago was not entitled to the bona fide private membership club exemption because it was not a club; he said that it was not entitled to the exemption because it was not private and did not have meaningful conditions of limited membership. *EEOC v. University Club of Chicago,* 763 F.Supp. 985, 988 (N.D.Ill.1991). *University Club* is therefore not authority for the proposition for which it is cited.

Plaintiff further contends that:

The issue of whether Defendant is a "traditional" club that Congress intended to exempt from Title VII coverage turns on whether Defendant's membership shares associational values that would be endangered if Defendant were required to comply with Title VII.

This, of course, is another form of the argument previously rejected. Moreover, nothing in the definition set forth in Policy Statement N–915 requires that a club be anything more than "an association of persons for social and recreational purposes or for the promotion of some common object." Everything else in the definition is either illustrative or sets forth common but not universal attributes of clubs. Defendant is surely "an association of persons for social and recreational purposes" and is therefore a club.

The second requirement is that defendant be private. Policy Statement N–915 states:

With respect to the requirement that the club be private, the Commission will consider such factors as:

(1) the extent to which it limits its facilities and services to club members and their guests;

(2) the extent to which and/or the manner in which it is controlled or owned by its membership; and

(3) whether and, if so, to what extent and in what manner it publicly advertises to solicit members or to promote the use of its facilities or services by the general public.

The presence or absence of any one of these factors will not determine whether a club will be considered private. Rather, the Commission will make its determination on a case-by-case basis, weighing these and any other relevant considerations.

*EEOC Compliance Manual* ¶ 2175 at 2317 (CCH, 1993). The magistrate judge noted that plaintiff:

[D]oes not dispute that the Chicago Club is owned and controlled by its membership, nor does it contend that the Club publicly advertises to solicit members or to encourage the public to use the Club's facilities. Thus, only the first factor is at issue.

Apparently based upon this statement, plaintiff states:

The Magistrate Judge correctly determined that whether Defendant is "private" turns on the extent to which Defendant limits use of its facilities to Defendant's members.

It is not obvious that the magistrate judge so determined; she just said that "only the first factor is at issue," which is certainly true in the sense that only the first factor is disputed. Moreover, if she did so determine she would have been in error, as Policy Statement N–915 states that the factor's presence or absence is not alone determinative of whether a club is private. See *EEOC Compliance Manual* ¶ 2175 at 2317 (CCH, 1993).

Most of plaintiff's argument that defendant is not private is based upon its erroneous interpretation of the statute, which has already been addressed. Plaintiff also contends that the magistrate judge was incorrect on certain of the facts.

In a lengthy footnote, to some extent devoted to plaintiff's right-of-association argument, plaintiff states that:

[T]he Magistrate Judge emphasizes that, generally, in order to "host" a meeting, the member allows his identification number to be used by the corporation or organization for billing purposes. Further, because a bill is mailed to the member, the Magistrate Judge concluded that Defendant required the member "hosting" the event to be financially responsible for the event. The evidence fails to support these findings. As discussed above, numerous events are held at Defendant's facility that are not attended by any of Defendant's members. Additionally, there is a clear distinction between "billing" of an event and financial responsibility for the event. Contrary to the Magistrate Judge's statement that Defendant has offered proof that a club member was financially responsible for each event ..., Defendant's members are *not* in fact financially responsible for the cost of most functions held at Defendant's facility.... It is undisputed that corporations and third-party organizations either pay Defendant directly or reimburse a member for use of Defendant's facilities and services.... It is simply uncontested that corporations and organizations independent of Defendant or its membership generally in fact host numerous events at Defendant's facility.

With very few exceptions, each function at defendant's facilities was hosted by one of defendant's members, albeit on many occasions the function was being hosted for another organization or a corporation. Billing for the function was to the member hosting it. In addition, in many instances the member hosting the function was billed for the function but the bill was actually paid by the organization or corporation on behalf of which the member had hosted the function. Plaintiff states that there is a clear distinction between billing of an event and financial responsibility for it. There is undoubtedly a clear distinction between who is billed and who actually pays for an event. There is also, contrary to the implication of plaintiff's argument, a clear distinction between who pays and who is financially responsible for an event. However, ordinarily, there is not a clear distinction between who is billed and who is financially responsible for a function. In this case the evidence is that the host member was billed for each function, and there is no evidence from which it could be concluded that defendant would not have made efforts to collect from the member in the event of non-payment of the bill. Additionally, the statement that "numerous events are held at Defendant's facility that are not attended by any of Defendant's members" does not appear to be correct; it appears rather that the member hosting is required to attend each event and that members do in fact attend the events they host.

In the body of the memorandum, plaintiff argues that the report and recommendation erroneously finds that one of defendant's members hosted, attended and was financially responsible for the event when events were held at defendant's facility and attended predominantly by non-members. Plaintiff specifically noted a meeting of Stein Roe & Farnham Incorporated, hosted by Kenneth Block, Sr., on April 28, 1993. Reservations were made by an employee of Mr. Block, a fact that plaintiff finds far more significant than does the court. Moreover, defendant cannot say for sure that Mr. Block attended, though the evidence shows that Mr. Block as a member of the Board of Directors for Stein Roe & Farnham hosted a Board meeting that day, that Mr. Block was financially responsible for the event, and that Mr. Block was required to attend the meeting. Assuming arguendo that Mr. Block did not attend the event in question, the balance of the evidence on the question establishes beyond dispute that with extremely rare exceptions the facilities and services of defendant are strictly limited "to club members *and their guests.*" EEOC Compliance Manual ¶ 2175 at 2317 (CCH, 1993) (emphasis added).

Therefore, the first of the factors noted in Policy Statement N–915 with respect to whether a club is private favors finding that defendant is private. Taken with the undisputed presence of the second and third factors, there is no dispute of material fact with respect to defendant's being private for purposes of qualification for the exemption.

The third requirement is that defendant require meaningful conditions of limited membership. Policy Statement N–915 states:

[I]n determining whether the requirement of meaningful conditions of limited membership is met, the Commission will consider both the size of the membership, including the existence of any limitations on its size, and the membership eligibility requirements.

*EEOC Compliance Manual* ¶ 2175 at 2317 (CCH, 1993). The magistrate judge concluded that both the size of defendant's membership and defendant's membership eligibility requirements indicate that the requirement of meaningful conditions of limited membership is met by defendant. Plaintiff does not object to the magistrate judge's conclusion with respect to the size of membership, but only to the magistrate judge's conclusion with respect to defendant's membership eligibility requirements.

Plaintiff includes in its argument on this issue the objection that the magistrate judge "fails to assess the evidence in light of whether Defendant selects its members in furtherance of associational freedom." This argument has already been addressed.

Defendant specifically takes issue with the magistrate judge's conclusion that "notwithstanding the fact that no individual seeking to enroll has ever been denied membership with Defendant ... Defendant 'prescreens' its candidates." There is a great deal of evidence relevant to this issue which is set forth in great detail in the report and recommendation. Briefly, the court notes that the undisputed evidence on this question establishes that no one can apply for membership without an invitation; that an individual must be proposed for membership by some current member who knows the individual; that members propose for membership individuals having leadership and status within the community; that defendant's fees are sizable; and that the newest 481 members are 65 corporate chairmen, 62 Chief Executive Officers, Chief Financial Officers or Chief Operating Officers, 101 corporate presidents, 101 corporate vice presidents, 96 partners or principals in major law, accounting or investment firms, 31 corporate directors, 5 college deans, 3 attorneys, and 2 branch managers of national financial institutions, and 15 who identified themselves as an accountant, an owner, a professor, a chancellor, a business executive, a communications executive, a general agent, a senior manager, an investment banker, a volunteer, a management consultant, an executive search professional, a manufacturer, a general counsel, and a regional general manager. The positions held by the 481 newest members of defendant certainly seem to indicate that screening of some sort is going on, and the other evidence strongly points to the prescreening of applicants by members proposing them for membership that the magistrate judge found.

Taking into account both the size of the membership and the membership eligibility requirements demonstrated, the evidence establishes that defendant has meaningful conditions of limited membership.

The undisputed facts establish that defendant is therefore a club in the ordinary sense of the word, is private, and has meaningful conditions of limited membership. The magistrate judge therefore correctly concluded that the undisputed facts establish defendant's eligibility for the bona fide private membership club exemption from the requirements of Title VII.

ORDERED: The objections of defendant, The Chicago Club, to the magistrate judge's January 30, 1995, report and recommendation are overruled. The objections of plaintiff, the Equal Employment Opportunity Commission, to the magistrate judge's January 30, 1995, report and recommendation are overruled. The magistrate judge's January 30, 1995, report and recommendation is accepted.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment in favor of defendant, The Chicago Club, and against plaintiff, the Equal Employment Opportunity Commission, on plaintiff's complaint for declaratory and injunctive relief will be set forth on a separate document and entered in the civil docket. FRCP 58, 79(a).