**Les JANKEY, Plaintiff,**

v.

**TWENTIETH CENTURY FOX FILM CORPORATION, Defendant.**

**No. CV 97–8948 LGB (AJWx).**

United States District Court,
C.D. California.

Aug. 6, 1998.

Thomas E. Frankovich, San Francisco, CA, for Plaintiff.

David Raizman, Bryan Cave, LLP, Santa Monica, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MO- TION TO DISMISS CONVERTED TO MOTION FOR SUMMARY JUDG- MENT AND DISMISSING PLAIN- TIFF'S STATE LAW CLAIMS

BAIRD, District Judge.

## I. INTRODUCTION AND PROCEDUR- AL BACKGROUND

Defendant's motion to dismiss, converted by this Court into a motion for summary judgment on the issue of whether Twentieth Century Fox film studio is a "public accom- modation" covered by the ADA, came on regularly for hearing on August 3, 1998. Having carefully considered the papers sub- mitted and oral argument of counsel, the Court hereby GRANTS summary judgment in favor of defendant. As the only remaining claims are state law claims, this Court DE- CLINES to exercise supplemental jurisdic- tion, pursuant to 28 U.S.C. § 1367(c)(3), and DISMISSES the remaining claims.

This case arises from the alleged inaccessi- bility to disabled persons of the facilities of defendant Twentieth Century Fox Film Cor- poration's ("Fox") film studio.

On December 4, 1997, plaintiff Les Jankey ("Jankey") filed his Complaint, alleging (1) violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 et seq.); (2) breach of Cal. Health and Safety Code § 19955; (3) violation of Cal.Civ.Code §§ 54, 54.1, 54.3 et seq.; and (4) violation of Cal.Civ- il Code §§ 51, 51.5. The jurisdiction of this Court is based on 28 U.S.C. § 1331 (federal question), specifically, 42 U.S.C. § 12182.

On February 6, 1998, defendant Fox filed a Motion to Dismiss and in the Alternative, Motion to Strike, plaintiff Jankey's Com- plaint. On March 2, 1998, Jankey filed an Opposition. On March 9, 1998, Fox filed a Reply. Fox's motion to dismiss was brought primarily on the basis that the Fox film studio is not a place of public accommodation, and therefore not subject to the ADA. Evi- dence outside the pleadings was presented.

The Court wished to consider the outside evidence. Should plaintiff's ADA claim be dismissed, federal jurisdiction over this case would then be absent, and the supplemental state law claims would be subject to dismissal pursuant to 28 U.S.C. § 1367(c)(3). On this basis, by Minute Order March 11, 1998, the motion to dismiss was converted to a motion for summary judgment on the issue of whether the Twentieth Century Fox film studio is covered by the ADA as a "public accommodation." The parties were permit- ted to file evidence on or before March 23, 1998 on this issue.

On March 23, 1998, Fox filed a Statement of Uncontroverted Facts and Conclusions of Law, and several supporting declarations. Plaintiff Jankey, however, rather than filing evidence, filed a "Response to and Request That The Court Strike The Court's Minute Order That Defendant's Motion To Dismiss Will Be Treated As A Motion for Summary Adjudication, Or, In The Alternative, To Oppose The Motion For Summary Adjudication," on March 23, 1998. Defendant filed a "Response to Plaintiff's Request" on March 23, 1998. Plaintiff filed a "Response to Defendant's Reply [Response]," on March 30, 1998. In plaintiff's Response, plaintiff presented a motion pursuant to Fed.R.Civ.P. 56(f). That motion was denied by Minute Order March 31, 1998, because it was unsupported by a declaration as required by *Nidds v. Schindler Elevator Corp.*, 103 F.3d 854, 862 (9th Cir.1996) and Fed.R.Civ.P. 56(f). However, plaintiff was granted leave to file a Rule 56(f) motion in conformity with the Federal Rules on or before April 7, 1998. Plaintiff did so, and plaintiff's Rule 56(f) motion was granted by Minute Order issued April 22, 1998. Pursuant to the April 22, 1998 Minute Order, plaintiff's Supplemental Opposition was to be filed on or before June 29, 1998.

Plaintiff's Supplemental Opposition was filed June 29, 1998. Although plaintiff's original Complaint identified at least twelve allegedly offending sites at the Fox film studio, as well as others "too numerous to list herein" (Compl. ¶ 25), plaintiff's Supplemental Opposition identifies just "three sites owned by [Fox] that are public accommodations," the Commissary, the Studio Store, and the ATM. (Supp. Opp. 2:7–11.) However, these three sites are all located within the lot. Therefore, although Jankey's Supplemental Opposition makes clear that Jankey is contending that these three sites are the *only* sites on the Fox studio lot which he is alleging violate the ADA, the proper analysis of the three sites also requires an analysis of the lot itself. (Supp. Opp. 2:7–16.) Nevertheless, plaintiff is considered to have waived

any claim that any other sites violate the ADA, and this Memorandum addresses the lot itself only in order to properly address whether any of the three specific sites are "public accommodations" covered by the ADA.[1]

On June 29, 1998, Fox filed an *Ex Parte* application seeking an extension of the deadline for filing its own Supplemental Reply, otherwise due July 6, 1998. The *Ex Parte* application was granted on July 6, 1998, extending the deadline until July 20, 1998. Fox's Supplemental Reply was filed July 21, 1998.[2]

## II. APPLICABLE LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment shall be granted if the evidence supporting the motion for summary judgment shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. If the non-moving party bears the burden of proof at trial, the moving party may carry its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324, 106

---

1. At oral argument, plaintiff's counsel also referred to restrooms in the Commissary. To the extent plaintiff seeks to make a distinct ADA claim respecting the Commissary bathrooms, any such claim was WAIVED by Supp. Opp. 2:7–16.

2. Counsel for Fox contacted the Court on July 20, 1998 to inform the Court of a power outage in Santa Monica which prevented timely filing and serving of the Supplemental Reply documents.

S.Ct. 2548. The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." A factual dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* 477 U.S. at 255, 106 S.Ct. 2505. If the nonmoving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* 477 U.S. at 249–50.

**B. "Public Accommodations" Under the ADA**

Section 302(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12182(a), provides, in pertinent part, as follows:

No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of any place of public accommodation* by any person who owns, leases (or leases to) or operates *a place of public accommodation.*

(Emphasis added.)

■ Whether a particular facility is a "public accommodation" under the ADA is a question of law. *See, e.g., Carparts Distrib. Center v. Automotive Wholesaler's*, 37 F.3d 12 (1st Cir.1994); *Kotev v. First Colony Life Ins. Co.*, 927 F.Supp. 1316, 1320–1323 (C.D.Cal.1996).

■ The purpose of the ADA is to insure that "individuals with disabilities [may] fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public." *Carparts*, 37 F.3d at 20. The determination of whether a facility is a "public accommodation" for purposes of coverage by the ADA therefore turns on whether the facility is open "indiscriminately to other members of the general public." *See, e.g.,* 42 U.S.C. § 12181(10) (covered public transportation is that which "provides the general public with general or special service ...."); 28 C.F.R. § 36.308(a)(1)(ii)(B) (covered assembly areas must "provide lines of sight and choice of admission prices comparable to those for members of the general public").

The ADA includes an exhaustive, not merely exemplary or illustrative, list of private entities which are nevertheless considered "public accommodations." The list includes, *inter alia,*

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; ...

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment.

42 U.S.C. § 12181(7).

"Many facilities that are classified as public accommodations are open only to specific invitees." *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 759 (D.Or.1997). The district court in *Independent Living* offered the following examples of public accommodations covered under the ADA (in *dicta*): "a facility that specializes in hosting wedding receptions and private parties [which] may be open only to invitees of the bridge and groom"; a convention center in which a political convention is held, "[a]ttendance at [which] is strictly controlled"; "[a] gymnasium or golf course ... open only to authorized members and their guests"; and a private school. *Independent Living*, 982 F.Supp. at 759.

■ However, occasional use of an exempt commercial or private facility by the general public is not sufficient to convert that facility into a public accommodation under the ADA. A private club, which is an exempt facility under 42 U.S.C. §§ 12182 and 12187, is not converted into a public accommodation under the ADA because it is occasionally used by the general public. *Kelsey v. University Club of Orlando*, 845 F.Supp. 1526, 1529 (M.D.Fla.1994). A private club with a "limited guest policy," in which guests are not permitted "unfettered use of facilities," is not a public accommodation for purposes of the ADA, despite evidence of "isolated incidents" in which the limited guest policy was not followed. *Kelsey*, 845 F.Supp. at 1530.

■ Among the factors the court considers in determining whether a facility is genuinely "private," and therefore exempt, are the following: the use of the facilities by nonmembers (or nonemployees, in the commercial context); the purpose of the facility's existence; advertisement to the public; and profit or non-profit status, *U.S. v. Lansdowne Swim Club,* 713 F.Supp. 785, 796–97 (E.D.Pa.1989). Under the first factor, use by nonmembers (or nonemployees), the court may consider "the extent to which [the facility] limits its facilities and services to [employees] and their guests." *Kelsey,* 845 F.Supp. at 1529. "Regular use" or "indiscriminate use" by nonmembers (or nonemployees) contradicts private status. *Lansdowne,* 713 F.Supp. at 804.

■ "Mixed use" facilities can also exist, consisting of an exempt facility of which a portion is a public accommodation. That portion, and only that portion, will therefore be subject to the ADA. The federal regulations clearly identify a movie studio which makes tours available as such a facility.

> If a tour of a commercial facility that is not otherwise a place of public accommodation, such as ... a movie studio production set, is open to the general public, the route followed by the tour must be operated in accordance with the rule's requirements for public accommodations. The place of public accommodation defined by the tour does not include those portions of the commercial facility that are merely viewed from the tour route. Hence, the barrier removal requirements of § 36.304 only apply to the physical route followed by the tour participants. ... If the tour is not open to the general public, but rather is

conducted, for example, for selected business colleagues, partners, customers, or consultants, the tour route is not a place of public accommodation and the tour is not subject to the requirements for public accommodations.

28 C.F.R. Pt. 36, App. B, 36.104, p. 615.

Conversely, a public accommodation may contain within itself a portion which is an "exempt area." *Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698, 758–760 (D.Or.1997). In *Independent Living,* the district court examined whether certain "executive suites" within a sporting arena qualified for an exemption from the ADA. The claim that the suites were exempt from the ADA was rejected, on the basis that the suites were "offered to the general public on a first-come, first-served basis," and that the suites were used for social and business activities which are "precisely the kind of function that was intended to be accessible to persons with disabilities" by the ADA. *Id.* 982 F.Supp. at 759.

## III. ANALYSIS

Fox argues that the three facilities specifically alleged to violate the ADA (the Commissary, the Studio Store, and the ATM) are located within the lot itself, which is not a "public accommodation," and that the three facilities are therefore not "public accommodations" and are exempt from ADA.[3] Fox also argues that Jankey lacks standing to challenge the accessibility of these facilities.

### A. General Factual Background

The following facts are relevant and undisputed, except as noted: [4]

---

**3.** It should further be noted that the portion of the ADA at issue in this case does not give plaintiff a right to recover damages. *Independent Living Resources v. Oregon Arena Corp.,* 982 F.Supp. 698, 762 (D.Or.1997). Only injunctive relief is available. In this case, it is undisputed that the three facilities now have wheelchair ramps, and that these ramps were constructed with the consultation of architectural and disability compliance experts. (Carrillo Decl. ¶ 5.) On this basis, even if the Court were to find that these three facilities are covered by the ADA, the result would not differ. The sole remedy available to plaintiff for his federal claims (violation of the ADA) has in effect already been provided, rendering plaintiff's claims under the ADA MOOT. This

Court would therefore decline to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3), and DISMISS the case.

**4.** Fox lodged a Statement of Uncontroverted Facts on March 23, 1998. Fox lodged a Second Statement on July 21, 1998. Although plaintiff's Statement of Genuine Issues tracks the original Statement, that Statement included facts about a number of facilities no longer at issue in this case. On this basis, the Court will refer to the Second Statement, and will match, as closely as possible, the Genuine Issues raised by plaintiff to the Second rather than the original Statement.

Plaintiff Les Jankey uses a wheelchair. (See, e.g., Jankey Depo. 118:14–15.)

The Fox film studio is a large movie and production facility located in Los Angeles, California. (Fox's Fact 1.) The Fox lot is ordinarily open and accessible only to individuals working on the lot, either as employees of Fox or some other Fox-related entity, and their authorized guests who visit for business purposes only. (Gray Decl. ¶ 1–3; Bristow Decl. ¶ 2–5.) Generally, in order for a non-employee to enter the lot, a Fox employee must request a "Drive–On" pass for any visitor, and only visitors whose names appear on the "Drive–On Pass List" for a given date may enter the lot. (Gray Decl. ¶ 3; Bristow Decl. ¶ 3–4; Fox's Fact 3.)

Plaintiff has presented admissible evidence that approximately a "dozen" times in the past twenty years he visited the lot without a pass. (Jankey Depo. 58:10–59:8.) Plaintiff describes himself as having been "waved through" without a pass on occasions when he visited the lot either in relation to fundraising events in which he was participating, or simply to drop an item off. (Jankey Depo. 60:9–21, 61:12–24.)

## B. Standing

■ In *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court held that in order to have standing, the party who files suit must

> show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.

Fox argues that Jankey lacks standing to claim that the Commissary, the Studio Store, and the ATM are inaccessible, on the basis

that those facilities either are not public accommodations, or were not required to be accessible at the times that Jankey used them. (Reply 16:15–17:1.)

It is undisputed that Jankey has never used the Commissary or Studio Store other than during their ordinary business hours. (Jankey Depo. 123:24–124:8 (Commissary); Jankey Depo. II 183:8–13 (Studio Store).) Jankey has tried to use the ATM only twice; the evidence presented does not indicate whether Jankey had a Drive–On Pass for the lot on the occasion when he used the ATM, or on a second occasion, when he attempted but was unable to use the ATM. (Jankey Depo. 117:25–118:13; Jankey Depo. II 229:17–23.)

However, under 42 U.S.C. § 12188(a)(1), any person who is being subjected to discrimination on the basis of disability has standing to file an action. "Actual notice" of an intent not to comply with the ADA is sufficient; the statute does not require "a futile gesture" by the disabled person. 42 U.S.C. § 12188(a)(1).

In this case, should the Court determine that the Commissary, the Studio Store, and/or the ATM are public accommodations covered by the ADA, Jankey's allegations of lack of access to those facilities qualify him as a person "subject to discrimination" and/or a person with "actual notice" of noncompliance. This constitutes an "actual or threatened injury," under *Valley Forge,* supra. Jankey therefore has standing to assert the violations of the ADA now alleged by him.[5]

## C. Analysis of the Commissary, the Studio Store, and the ATM

■ It is undisputed that Fox's policy is that the lot itself is only open to employees,

---

**5.** Fox cites a "Letter from Deval Patrick, Asst. Atty. General, 10 N.D.L.R. 43 (Aug. 5, 1996)," in support of its contention that if a facility is a public accommodation only at certain times, it is only required to comply with the ADA at those times. (Reply 16:6–19.) Fox argues, on the basis of this letter, that even if the facilities Jankey alleges to be public accommodations are public accommodations when used by the general public, they were not public accommodations at the times Jankey used them, and so he lacks stand-

ing. Fox's argument is without merit. First, Fox has not provided the Court with the Patrick letter, nor with any authority suggesting that such a letter would bind this Court. Moreover, even if the Court accepted the reasoning of the letter as represented by Fox, Jankey's alleged inability to access the facilities in question at times when the facilities were exempt surely constitutes "actual notice" of the inaccessibility of those facilities at other times, giving Jankey standing under 42 U.S.C. § 12188.

and those for whom employees have individually procured a "Drive–On Pass." (Gray Decl. ¶ 1–3; Bristow Decl. ¶ 2–5.) Plaintiff has presented evidence that as an individual known to persons at the Fox lot, he was sometimes "waved through" without a pass. (Jankey Depo. 58:10–59:8, 60:9–21, 61:12–24.) This evidence is insufficient to support an inference that access to the lot is "available indiscriminately to other members of the general public," as required for a public accommodation under *Carparts*, 37 F.3d at 20. Alternatively, under *Kelsey*, 845 F.Supp. at 1529–1530, the Fox lot has a "limited guest policy," under which non-employees must have a Drive–On Pass which has been requested by an employee. Plaintiff's evidence of access without such a pass constitutes the sort of "isolated incident" which is insufficient to render the lot a public accommodation under *Kelsey*. On this basis, the lot as a whole is not a public accommodation, and is not covered by the ADA. Summary judgment is therefore GRANTED to Fox that the Twentieth Century Fox film studio lot is NOT a place of "public accommodation" covered by the ADA.

However, Jankey also argues that specific facilities within the lot are public accommodations; that is, that the lot is a "mixed use" facility. On this basis, those facilities will be analyzed individually.

## 1. The Commissary

### a. Relevant Factual Background

The Commissary is located in the northeast corner of the Fox studio lot. (Carrillo Decl. Exh. A.) Plaintiff has presented no evidence that the Commissary can be reached other than by entering the lot first.

The Commissary is not open to members of the general public during its regular business hours (Monday through Friday, 7 a.m.– 2 p.m.). (Lafferty Supp. Decl. ¶ 3, 16.) The primary purpose of the Commissary is to provide a benefit to Fox employees. (Lafferty Supp. Decl. ¶ 3.) Since 1992, Fox has occasionally made the Commissary available for rent outside of regular business hours.

(Lafferty Supp. Decl. ¶ 8.) During this time, thirty-eight events have been held in which the Commissary was used for an event by or for a non-Fox-related entity. (Lafferty Supp. Decl. ¶ 8.) Paul Lafferty, Fox's Director of Food Services, determines which applications for after-hours use shall be accepted, and has testified that applications from individual users are typically rejected, as are applications to use the facility for personal, family, or holiday celebrations. (Lafferty Suppl. Decl. ¶ 1, 13.) Lafferty makes booking decisions subject to his own criteria. (Lafferty Depo. 38:6–43:19.) The Commissary is not a profitable venture, and is not rendered profitable by rental to non-Fox-related entities on an occasional basis. (Lafferty Supp. Decl. ¶ 5, 7, 15.)

Jankey used the Commissary during ordinary business hours only. (Jankey Depo. 123:24–124:8.)

Lafferty created a document entitled "General Information for Catering Events." (Frankovich Decl., Exh. B; Lafferty Depo. 9:16–10:18.) This document was provided to "an organization that has inquired about an event." (Lafferty Depo. 11:1–6.) The testimony does not indicate what organizations ever received this form, or whether "an organization" refers to an organization within Fox, or an outside entity.[6]

Plaintiff has also presented admissible evidence that between 1992 and 1996, Fox ran a "small ad" in the Los Angeles Masterplanner, a subscription publication for planners of major fund-raising events. (Lafferty Depo. 11:22–12:16, 13:7–12.)

There is now a wheelchair-accessible ramp to the Commissary. (Carrillo Decl. ¶ 5.) This ramp was constructed in consultation with architectural and disability compliance experts. (Carrillo Decl. ¶ 5.)

### b. Discussion

■ As set out above, the lot itself is not a public accommodation. Plaintiff has presented no evidence of access to the Commissary other than through the lot. Access to

---

6. Other portions of the Lafferty Depo. cited by plaintiff relating to this information sheet either do not address this issue (4:21–25; 5:1–10), or contain questions which were objected to and therefore not answered (8:20–23; 10:25–11:16), including questions about who received the information sheet.

the Commissary is therefore not "available indiscriminately to [nondisabled] members of the general public," as required for a public accommodation under *Carparts,* 37 F.3d at 20. During regular business hours, the Commissary is better analogized to the private club in *Kelsey,* which had a "limited guest policy" enforced in all but a few "isolated incidents." During business hours, there is no evidence that the Commissary is available to the "general" public. Rather, the evidence indicates that only employees and guests with Drive–On passes can gain access to the Commissary during ordinary business hours. ·

Plaintiff argues that the availability of the Commissary for occasional after-hours rental renders it a public accommodation. However, unlike the suites in *Independent Living,* supra, the Commissary is not available for rent to the general public on a "first-come, first-served basis," nor for functions which the ADA specifically intended to be made available to persons with disabilities. The evidence indicates that the Commissary is sometimes rented to organizations outside Fox, and was advertised at one time for the use of major fund-raising events. Whether an organization wishing to rent the Commissary would be permitted to do so is in the discretion of Lafferty, the director. This does not constitute a privilege "available indiscriminately to ... members of the general public." *Carparts,* 37 F.3d at 20. Nor does the occurrence of thirty-eight events over the course of several years rise to the level of "regular" or "indiscriminate" use by nonemployees which contradicts exempt status under *Lansdowne,* 713 F.Supp. at 804. Unlike *Lansdowne,* the Commissary does not host any regular or annual events open to the public, nor is the Commissary available in any regular or indiscriminate way for public use. The Commissary can therefore be distinguished from the facilities considered to be public accommodations in *Independent Living,* and *Lansdowne,* supra, which make their facilities available to the general public for invitation-only events.

In determining whether the Commissary is an exempt facility, the court may also consider "the extent to which [the Commissary] limits its facilities and services to [employees] and their guests." *Kelsey,* 845 F.Supp. at 1529. It is undisputed that during regular business hours, only employees and their guests have access to the Commissary. (Lafferty Supp. Decl. ¶ 3, 16.) It is also undisputed that since 1992, there have been just thirty-eight after-hours events at the Commissary hosted by non-Fox-related entities. (Lafferty Supp. Decl. ¶ 8.) To a very great extent, use of the Commissary facilities is limited to Fox employees and their guests. This factor therefore favors a finding that the Commissary is an exempt facility.

The court may also consider the purpose of the facility, and whether it is profitable, under *Lansdowne,* 713 F.Supp. at 797, and *Martin v. PGA Tour, Inc.,* 984 F.Supp. 1320, 1325 (D.Or.1998). In this case, the Commissary is a money-losing operation, whose primary purpose is to provide a benefit to Fox employees. (Lafferty Supp. Decl. ¶ 3.) These factors also favor a finding that the Commissary is an exempt facility.

On this basis, summary judgment is GRANTED that the Commissary is not a "public accommodation" covered by the ADA.

## 2. The Studio Store

### a. Relevant Factual Background

The Studio Store is located in the same building as the Commissary, in the northeast corner of the lot. (Carrillo Decl. Exh. A.) In order to enter the Studio Store, one must first enter the lot.

The Studio Store is not a profitable venture, and routinely operates at a loss. (Lillo–Thieman Supp. Decl. ¶ 5–6.) The purpose of the Studio Store is to serve as a benefit for Fox employees. (Lillo–Thieman Supp. Decl. ¶ 3–4.) In the past eleven years, the Studio Store has been open for an event outside regular business hours approximately six times. (Frankovich Decl., Exh. G, Lillo–Thieman Depo. 9:10–12.) Two of those occasions have taken place since 1992. (Lillo–Thieman Supp. Decl. ¶ 9.) One of these events was for MCI, which had a business relationship with a Fox-related entity at that time. (Lillo–Thieman Supp. Decl. ¶ 9.) There is no evidence regarding the second occasion.

The Studio Store's "Operations and Procedures" manual refers to one category of cus-

tomer as "Non-employee guests," and states that such customers, unlike employees, get no discount on logo merchandise. (Lillo–Thieman Supp. Decl. ¶ 10, Exh. I.) The manager of the store testified that her understanding of "Non-employee guests" is that this term "principally refers to the authorized guests of" Fox and [Fox] Production employees, as well as individuals who shop at the Studio Store while attending an event at the Commissary. (Lillo–Thieman Supp. Decl. ¶ 10.)

Plaintiff could not recall ever visiting the Studio Store other than during regular business hours. (Jankey Depo. II 183:8–13.)

There is now a wheelchair-accessible ramp to the Studio Store. (Carrillo Decl. ¶ 5.) This ramp was constructed in consultation with architectural and disability compliance experts. (Carrillo Decl. ¶ 5.)

**b. Discussion**

■ The analysis set out above as to the Commissary applies with at least equal force to the Studio Store. The undisputed evidence indicates that the Studio Store is a facility provided to Fox employees on the lot during the business day, and for their benefit, which has on two occasions in six years been rented to other private entities. Other than those two occasions, the evidence indicates that only employees and guests with Drive–On passes can gain access to the Studio Store. It is undisputed that the only access to the Studio Store is through the lot, which is not itself a public accommodation, and that only persons with access to the lot have access to the Studio Store. Access to the Studio Store is in no way "available indiscriminately to [nondisabled] members of the general public," as required for a public accommodation under *Carparts*, 37 F.3d at 20.

In determining whether the Studio Store is an exempt facility, the court may consider "the extent to which [the Studio Store] limits its facilities and services to [employees] and their guests." *Kelsey*, 845 F.Supp. at 1529. It is undisputed that during regular business hours, only employees and their guests have access to the Studio Store. (Lafferty Supp. Decl. ¶ 3, 16.) It is also undisputed that since 1992, there have been just two occasions on which the Studio Store was open

after-hours, in support of events at the Commissary. (Lillo–Thieman Supp. Decl. ¶ 9.) Use of the Studio Store is therefore almost entirely limited to Fox employees and their guests, favoring a finding that the Studio Store is an exempt facility. ·

Unlike the suites in *Independent Living*, supra, the Studio Store rentals were not on a "first-come, first-served basis," nor does the evidence indicate that the Studio Store was used for functions which the ADA intended to be made available to persons with disabilities. One occasion was an event hosted by a private commercial entity related to Fox. (Lillo–Thieman Supp. Decl. ¶ 10.) There is no evidence about the second occasion. Evidence that on six occasions in eleven years, the Studio Store was open in association with an event at the Commissary does not reach the level of "regular" or "indiscriminate" use by nonemployees which contradicts exempt status under *Lansdowne*, 713 F.Supp. at 804. Unlike *Lansdowne*, the Studio Store was not open on any regular or annual basis to the public. The Studio Store can therefore be distinguished from the facilities considered to be public accommodations in *Independent Living* and *Lansdowne*, supra, which make their facilities available to the general public for invitation-only events. Plaintiff has failed to present evidence raising a genuine issue otherwise.

Believing plaintiff's evidence and drawing all justifiable inferences therefrom, there is still no evidence that the Studio Store is ever available to the "general" public. In light of the undisputed evidence regarding access to the Studio Store, the mention of "Non-employee guests" in the Studio Store manual is not "significantly probative" of access to the Studio Store by the "general public," and therefore does not preclude summary judgment under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On this basis, summary judgment is GRANTED that the Studio Store is not a "public accommodation" covered by the ADA.

**3. The ATM**

**a. Relevant Factual Background**

The Executive Office Building ("Building 88") at the film studio includes an automated

teller machine ("ATM"), located on the exterior northwest wall. (Fox's Fact 26.) The Executive Office Building is located in the middle of the lot. (Carrillo Decl. Exh. A.) There is no evidence that a person can reach the Building 88 ATM without first entering the lot itself.

Jankey has used this ATM on one occasion, when another person assisted him. (Jankey Depo. 117:25–118:16.) On another occasion, he was unable to use it, due to the lack of wheelchair access. (Jankey Depo. II 229:17–23.)

There is now a wheelchair ramp at Building 88, permitting access to this ATM. (Carrillo Decl. ¶ 5.) This ramp was constructed in consultation with architectural and disability compliance experts. (Carrillo Decl. ¶ 5.)

### b. Discussion

 Under the ADA, only the offices of service professionals are "public accommodations." 42 U.S.C. § 12181(7)(F) (public accommodations include the "office of an accountant or lawyer ... [the] professional office of a health care provider, hospital, or other service establishment"). It is undisputed that Building 88 contains no offices of medical or paramedical professionals. (Carrillo Decl. ¶ 4.) It is also undisputed that the lawyers' and accountants' offices in Building 88 do not offer services to the general public, but rather are the offices of "in-house" legal and accounting professionals for Fox. (Carrillo Decl. ¶ 4.)

In contending that the ATM in the Executive Office Building is a "place of public accommodation," plaintiff relies on *Donald v. Sacramento Valley Bank*, 209 Cal.App.3d 1183, 260 Cal.Rptr. 49 (1989). *Donald* is distinguishable. First of all, the ATM in *Donald* was located at the bank itself. Under 42 U.S.C. § 12181(7)(F), a bank is specifically identified as a private entity which is a place of public accommodation under the ADA. Moreover, the *Donald* court, in finding the ATM to be subject to the rules governing handicapped accessibility, relied upon the ATM as a part of a "place to which the general public is invited." *Donald*, 209 Cal.

App.3d at 1195. Plaintiff has not presented evidence raising a genuine issue that the Executive Office Building is such a place. *Donald* therefore does not control this case.

Plaintiff has therefore failed to present evidence that Building 88, or the ATM located there, is a public accommodation under the ADA. Under *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. That is the case here. On this basis, summary judgment should be GRANTED that the ATM is not a "public accommodation" covered by the ADA.

### IV. CONCLUSION

On the basis of the foregoing, the Court hereby GRANTS summary judgment in favor of Fox that the Twentieth Century Fox film studio lot, the Commissary, the Studio Store, and the Building 88 ATM are NOT places of "public accommodation" under the ADA. On this basis, summary judgment is GRANTED in favor of Fox on all of plaintiff's ADA claims. Plaintiff alleges no other federal claims against Fox. On this basis, the Court DECLINES to exercise supplemental jurisdiction over Jankey's state claims against Fox, pursuant to 28 U.S.C. § 1367(c)(3), and DISMISSES the remaining claims.

**IT IS SO ORDERED.**