[No. B202356. Second Dist., Div. Eight. May 5, 2009.]

DAVE NICHOLLS, Plaintiff and Appellant, v.
HOLIDAY PANAY MARINA, L.P., Defendant and Respondent.

COUNSEL

Center for Disability Access, Mark Dee Potter and Russell C. Handy for Plaintiff and Appellant.

Sedgwick, Detert, Moran & Arnold, Craig S. Barnes, Douglas J. Collodel and Alison K. Beanum for Defendant and Respondent.

OPINION

**RUBIN, Acting P. J.**—Dave Nicholls appeals from the trial court's dismissal of his complaint under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.)[1] against Holiday Panay Marina, L.P. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Respondent Holiday Panay Marina, L.P., operates a marina in Marina Del Rey, California. The marina is private, and only the marina's tenants may use

---

[1] Subsequent statutory references are to title 42 of the United States Code.

its facilities. Appellant Dave Nicholls rents a slip at the marina, where he moors his boat. Because appellant is a quadriplegic, he uses a wheelchair, which makes parts of the marina inaccessible to him. In May 2006, appellant sued respondent (and others who are not parties to this appeal) alleging the marina's inaccessibility violated the Americans with Disabilities Act (ADA). Respondent moved for summary adjudication of appellant's ADA claims against respondent. Respondent argued the ADA did not apply to the marina because the marina was not a "place of public accommodation."[2] The court agreed, and entered judgment of dismissal for respondent. This appeal followed.

## DISCUSSION

### 1. *Trial Court's Ruling and Standard of Review*

The ADA prohibits places of public accommodation from discriminating against people with disabilities. It states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (§ 12182(a).) In this case of first impression, the trial court concluded the marina and its boat slips were similar to an apartment building or condominium complex. Correctly noting that the ADA does not apply to houses, apartments, and condominiums (*Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540, 1552–1553 [87 Cal.Rptr.3d 602]; *Indep. Housing Services v. Fillmore Ctr. Associates* (N.D.Cal. 1993) 840 F.Supp. 1328, 1344), the court concluded the ADA likewise did not apply to the marina. The court stated, "the marina is more

---

[2] The marina's private nature does not necessarily disqualify it from being a "place of public accommodation" because the ADA defines public accommodation to include numerous types of private entities for which the word "public" reflects the entity's use in commerce, not its ownership. (§ 12181(7); see also fn. 3, *post.*) And, although respondent describes the marina as a private "establishment," respondent does not contend it is a "private club," which would make it exempt under the ADA. (§ 12187; see, e.g., *Jankey v. Twentieth Century Fox Film Corp.* (C.D.Cal. 1998) 14 F.Supp.2d 1174, 1179 (*Jankey*); *U.S. v. Lansdowne Swim Club* (E.D.Pa. 1989) 713 F.Supp. 785, 796–797; *Bommarito v. Grosse Pointe Yacht Club* (E.D.Mich., Mar. 26, 2007, No. 05-CV-73359) 2007 WL 925791.) Features that tend to make an organization a private club include selectivity in membership; restriction of nonmembers' use of facilities; the degree of member control of the organization's operations; the purpose of the organization's existence; advertisement to the public; substantial membership fees; and, the organization's profit or nonprofit status. (*Jankey*, at p. 1179, citing *U.S. v. Lansdowne Swim Club*, at pp. 796–797; *Bommarito v. Grosse Pointe Yacht Club, supra*, 2007 WL 925791.)

analogous to an apartment or condominium complex, which facilities do not constitute public accommodations within the meaning of the Act." The court therefore concluded the marina's inaccessibility to appellant's wheelchair did not violate the ADA. We conclude the court erred.

■ This appeal involves the interpretation of statutory language applied to undisputed facts, and therefore we independently review the judgment for respondent. (*California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546 [61 Cal.Rptr.3d 318].) We must interpret the ADA's provisions liberally to further its purpose of allowing people with disabilities to enjoy access to the same establishments as those frequented by people who are not disabled. (*Coronado v. Cobblestone Village Community Rentals, L.P.* (2008) 163 Cal.App.4th 831, 848 [77 Cal.Rptr.3d 883]; *PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 676–677 [149 L.Ed.2d 904, 121 S.Ct. 1879].) A broad interpretation of the statute allows the ADA to enhance autonomy and human dignity in day-to-day living.

2. *Identifying a Marina As an Included Rental Establishment Furthers the ADA's Purpose*

■ The ADA applies to establishments that fall within any of 12 categories. One category is "sales or rental establishment[s]." (§ 12181(7)(E).)[3] Here, appellant leased a slip at respondent's marina, making the marina on its face a "rental establishment."

True, the ADA does not expressly identify a marina as a specific place of public accommodation. But federal regulations applying the statute note that although the 12 categories of public accommodations are exclusive, its illustrative examples for each category are not.[4] The regulations explain:

---

[3] The other 11 ADA categories are: 1. Places of lodging. 2. Establishments serving food or drink. 3. Places of exhibition or entertainment. 4. Places of public gathering. 5. Service establishments. 6. Stations used for specified public transportation. 7. Places of public display or collection. 8. Places of recreation. 9. Places of education. 10. Social service center establishments. 11. Places of exercise or recreation. (28 C.F.R. § 36, appen. B (2008).)

[4] The ADA more fully identifies the following private, nongovernmental places as public accommodations:

"The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—

"(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

"Within each category only a few examples are given. . . . [T]he category of sales or rental establishments would include an *innumerable* array of facilities that would sweep far beyond the few examples given in the regulation. For example, other retail or wholesale establishments selling or renting items, such as bookstores, videotape rental stores, car rental establishment, pet stores, and jewelry stores would also be covered under this category, even though they are not specifically listed." (28 C.F.R. § 36, appen. B (2008), italics added.) The regulations thus make clear that the ADA's failure to mention marinas that lease boat slips to the public does not preclude marinas from being rental establishments to which the ADA applies.

■ In deciding whether a marina is a public accommodation even in the absence of an express designation, we ask whether its inclusion furthers the ADA's purpose. By enacting the ADA, Congress intended the " 'integration of persons with disabilities into the economic and social mainstream of American life.' " (*Helen L. v. DiDario* (3d Cir. 1995) 46 F.3d 325, 331, italics omitted.) A person confined to a wheelchair ought to be able to enjoy the social and recreational pleasures of boating to the greatest extent consistent with his physical limitations. Appellant does not ask respondent to rent him a boat customized to accommodate his confinement to a wheelchair; he wants only to rent a slip at which to moor his boat. Just as unmodified parking lots may limit a disabled person's access to one's land vehicle, the marina's inaccessibility to appellant's wheelchair limits his access to his boat. The ADA's application to rental establishments aims to remove those limits.[5]

"(B) a restaurant, bar, or other establishment serving food or drink;

"(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

"(D) an auditorium, convention center, lecture hall, or other place of public gathering;

"(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

"(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

"(G) a terminal, depot, or other station used for specified public transportation;

"(H) a museum, library, gallery, or other place of public display or collection;

"(I) a park, zoo, amusement park, or other place of recreation;

"(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

"(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

"(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." (§ 12181(7).)

[5] We note that the only question before us is the threshold issue of whether the marina is a place of public accommodation. We do not address what, if any, "readily achievable" modifications respondent must make to the marina to increase its accessibility to appellant. (See § 12181(9); § 12182(b)(2)(A)(iv) [removal of architectural barriers]; § 12183 [discussing legal requirements involving new construction and modifications to existing facilities].)

### 3. *The Fact That the Marina Is "Private" Is Not Dispositive*

Respondent contends the marina is not a place of public accommodation because the marina is private. For example, tenants must use card keys that only they possess to enter the marina. Additionally, tenants need their card keys to get out onto the docks to reach their boats. Common areas in the marina, such as bathrooms, are inaccessible without a card key. And finally, respondent does not allow within the marina any functions open to the general public.

■ Respondent's recourse to excluding everyone except tenants from the marina is unavailing because restricted access does not, by itself, make an accommodation nonpublic. A number of places may prohibit the general public from entering without losing their status as public accommodations. For example, a private school may allow only enrolled children and their parents onto school grounds while remaining a public accommodation. (§ 12181(7)(J) [private school a public accommodation].) Gymnasiums, health spas, and golf courses might permit only members to use their facilities without losing their public character. (§ 12181(7)(L).) Theaters, concert halls, and stadiums may limit entry to people who pay an admission price or have reserved seats but still be public accommodations. (§ 12181(7)(C).) As one court noted: "Many facilities that are classified as public accommodations are open only to specific invitees. For instance, a facility that specializes in hosting wedding receptions and private parties may be open only to invitees of the bride and groom, yet it clearly qualifies as a public accommodation. [Citation.] Attendance at a political convention is strictly controlled, yet the convention center is still a place of public accommodation. [Citation.] A gymnasium or golf course may be open only to authorized members and their guests, but that does not necessarily preclude it from being classified as a place of public accommodation. [Citation.] A private school may be open only to enrolled students, but it is still a place of public accommodation." (*Independent Living Resources v. Oregon Arena Corp.* (D.Or. 1997) 982 F.Supp. 698, 759 (*Independent Living Resources*).)

Selectivity in choosing who among members of the public may enter or use an accommodation does not necessarily defeat its public character. As the Ninth Circuit noted in *Martin v. PGA Tour, Inc.* (9th Cir. 2000) 204 F.3d 994: "[T]he fact that users of a facility are highly selected does not mean that the

facility cannot be a public accommodation. For example, Title III includes in its definition 'secondary, undergraduate, or postgraduate private school[s].' [Citation.] The competition to enter the most elite private universities is intense, and a relatively select few are admitted. That fact clearly does not remove the universities from the statute's definition as places of public accommodation. It is true that the rest of the public is then excluded from the schools, but the students who are admitted are nevertheless members of the public using the universities as places of public accommodation." (*Martin v. PGA Tour, Inc.*, at p. 998.)

The decision in *Independent Living Resources, supra*, 982 F.Supp. 698, is illustrative. In that case, the question was whether private executive suites in a sports arena were public accommodations. *Independent Living Resources* held they were. A suite's owner held the suite under a multiyear license from the arena. Each suite was an enclosed room with its own kitchen, refrigerator, bathroom, furniture, and entertainment center overlooking the arena's floor. (*Id.* at p. 758.) Rejecting the argument that the suites were not public accommodations because the suite's owner could prohibit members of the general public from entering the suite, the court explained, "The suites are licensed on a multi-year basis, but that is true of many other seats at the [arena] which likewise are available only through multi-year contracts. The suites were offered to the general public on a first-come, first-served basis, as with all other season tickets at the [arena]. [¶] Although the general public may not just stroll in and watch the game from the suites, that is true of any reserved seat in the building or, for that matter, any box seat at Fenway Park. The suites need not be open to every member of the public in order to be a public accommodation." (*Id.* at p. 759.) Likewise here. Respondent excludes members of the general public from entering the marina, and under his lease appellant presumably has exclusive use of his boat slip allowing him to refuse to allow other boats to tie up in his spot. Nothing in the record suggests, however, that leases are not available to members of the general public on a first-come, first-served basis as they become available. And because the leases in principle are offered to the public from time to time, the marina remains a public accommodation.

Respondent tries to downplay *Independent Living Resources*'s applicability here by noting that the ADA specifically names a "stadium" as a public accommodation. (§ 12181(7)(C).) Thus, respondent concludes, *Independent Living Resources*'s holding that the suites were public accommodations was

a foregone conclusion driven by statutory language identifying stadiums, language that offered no guidance about marinas. But, the issue in *Independent Living Resources* was not whether the ADA covered the arena, but whether the ADA applied to the suites. If, as respondent contends, the answer trivially arose from the ADA's provision naming stadiums, then *Independent Living Resources*'s lengthy analysis of the suites' features and character was unnecessary. By respondent's reasoning, the *Independent Living Resources* court could have saved itself much paper and ink simply by declaring the ADA covered the suites because they were part of the arena—yet the *Independent Living Resources* court conducted a thorough analysis because the suites' placement inside the arena did not necessarily mean the suites were themselves public accommodations. (Accord, *Jankey, supra*, 14 F.Supp.2d 1174 [areas of film studio visited by public tour were required to comply with ADA, but areas not part of the tour, such as employee commissary, did not need to comply].) Hence, the analysis in *Independent Living Resources* involved more than simply laying the word "stadium" over the executive suites, and that analysis is illuminating here.

Respondent further contends the marina was not a place of public accommodation because a public accommodation must be "indiscriminately" open to the general public. Respondent draws its contention from *Jankey, supra*, 14 F.Supp.2d 1174. In *Jankey*, the court stated, "The determination of whether a facility is a 'public accommodation' . . . turns on whether the facility is open 'indiscriminately to other members of the general public.'" (*Id.* at p. 1178.) Respondent's reliance on *Jankey*'s use of the word "indiscriminately" is misplaced. "Indiscriminately" does not mean a place is a public accommodation only if all members of the public may freely enter the place at any time. Rather, in using that word, *Jankey* was citing language from *Carparts Distri. Ctr. v. Automotive Wholesaler's* (1st Cir. 1994) 37 F.3d 12. *Carparts* noted that Congress "inten[ded]" by enacting the ADA "that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public." (*Carparts*, at p. 20.) In the context of which *Carparts* spoke, the ADA in other words aspired for people with disabilities to have the same access to the social and economic mainstream that other members of the public had without regard (indiscriminately) to disability. And *Jankey* so understood that meaning when it stated, "The purpose of the ADA is to insure that 'individuals with disabilities [may] fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general

public.' " (*Jankey*, at p. 1178.) Thus, "indiscriminately" does not carry the meaning respondent urges here.

### 4. *The ADA's Treatment of Lodging Does Not Assist Respondent*

The trial court rested its analysis of the marina's character on the ADA's treatment of different types of lodging. The court correctly noted that the ADA applied to transient lodging, such as hotels and motels. (*Birke v. Oakwood Worldwide, supra,* 169 Cal.App.4th at pp. 1552–1553 (conc. & dis. opn. of Perluss, J.).) The court further correctly noted that the ADA did not apply to residences of greater permanency, such as apartments and condominiums. In that vein, the court emphasized a distinction between *licensing* the suites in *Independent Living Resources* and *leasing* an apartment or condominium. Applying that distinction, the court concluded that appellant's leasing of a slip in the marina more closely resembled permanent lodging of an apartment or condominium, which are not public accommodations, than the transient "licensing" of lodging in a hotel or motel, which are public accommodations.

The court erroneously miscast the marina as permanent lodging exempt from the ADA instead of a rental establishment to which the ADA applied. The record contains no evidence that appellant or other marina tenants lived at the marina or regularly slept overnight on their boats.[6] Thus, the court went beyond the record when it cast the boats as floating apartments or condominiums, and appellant's lease of his slip as analogous to a lease for a dwelling. Respondent contends appellant waived the absence of such evidence on appeal, but respondent cites no authority showing a party *opposing* summary judgment or adjudication waives the *moving* party's failure to present evidence to support judgment for the moving party. Moreover, we independently review whether respondent was entitled to summary adjudication, and in that review respondent carries the burden of demonstrating it was entitled to summary adjudication. (*California Veterinary Medical Assn. v. City of West Hollywood, supra,* 152 Cal.App.4th at p. 546.) If evidence supporting respondent's claim is not in the record, then it is not in the record, and we cannot rely on nonexistent evidence to affirm summary adjudication. (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 929 [134 Cal.Rptr.2d 101].)

---

[6] We leave for another day the question of whether the ADA applies to a marina that tenants use as their residence.

## DISPOSITION

The judgment for respondent is vacated and the trial court is directed to enter a new and different order denying respondent's motion for summary adjudication. Appellant to recover his costs on appeal.

Flier, J., and O'Neill, J.,* concurred.

On June 3, 2009, the opinion was modified to read as printed above.

---

*Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.