[No. G041177. Fourth Dist., Div. Three. Sept. 21, 2009.]

EVAN CAROLYN, Plaintiff and Appellant, v.
ORANGE PARK COMMUNITY ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Law Offices of B. Paul Husband, B. Paul Husband; and Cheryl Alison Skigin for Plaintiff and Appellant.

Kulik, Gottesman, Mouton & Siegel and Mitchell S. Brachman for Defendant and Respondent.

## OPINION

IKOLA, J.—Defendant Orange Park Community Association (OPCA)[1] maintains and exercises control over a series of recreational trails on portions of the association "common area" (Civ. Code, § 1351, subd. (b)). The trails border Broadmoor Park homes and Saddlehill development, OPCA residential developments in Orange Park Acres. The OPCA trails connect to a larger system of trails maintained by other associations or by government entities (such as Orange County and nearby municipalities). In 2007, citing safety concerns for "horseback riders and trail hikers," as well as damage to trail fencing, OPCA installed barriers on its trail entry points to prevent vehicles from utilizing the trails.

Plaintiff Evan Carolyn sued OPCA, alleging he "made plans to use the OPCA Trail System by means of a horse drawn carriage in or about early July 2007, but discovered that the trails were no longer available for use by disabled people such as himself in a horse drawn carriage and/or other horse drawn vehicle as a result of the alteration of the OPCA Trail System by OPCA . . . ." Based on these factual allegations, Carolyn pleaded five separate causes of action (1) for violation of title III of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12181 et seq.; the ADA); (2) for violation of the California Disabled Persons Act (Civ. Code, §§ 54, 54.1); (3) for violation of the Unruh Civil Rights Act (Civ. Code, §§ 51–52); (4) for violation of Health and Safety Code section 19955 et seq.; and (5) for violation of Government Code section 4450 et seq.

The court granted summary judgment in favor of OPCA. The court based its ruling on the determination "that the trails are not a 'public accommodation' within the definition of the Americans with Disabilities Act, California Disabled Persons Act, Unruh Act, Government Code § 4450 and Health and Safety Code § 19955. Unless the trails are a public accommodation within the meaning of the statutes, there is no violation." Carolyn appeals the judgment, claiming the court erred in concluding the trails are not a public accommodation. We affirm.

### FACTS

OPCA filed a summary judgment motion based almost entirely on the argument that its trails did not constitute a public accommodation under

---

[1] OPCA is a " '[c]ommon interest development' " (Civ. Code, § 1351, subd. (c)) under the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.).

the ADA or state law. Carolyn filed a summary judgment motion as well, but the court denied his motion and the denial of Carolyn's motion is not before us on appeal.

In support of its motion, OPCA filed declarations of the president of OPCA's Board of Directors and a member of the Arena and Trails Committee for OPCA, properly referencing this evidence by way of a separate statement of material facts. (Code Civ. Proc., § 437c, subd. (b)(1).) We set forth herein only those material facts identified by OPCA that are pertinent to our review, as well as allegedly disputed material facts offered by Carolyn in opposition to OPCA's motion. (Code Civ. Proc., § 437c, subd. (b)(3).)

*OPCA's Separate Statement*

We deem the following six facts set forth in OPCA's separate statement to be undisputed, either because Carolyn (1) failed to meet his obligation of unequivocally stating whether the fact was disputed or undisputed (Code Civ. Proc., § 437c, subd. (b)(3)); (2) raised unmeritorious objections to competent evidence; or (3) presented evidence that failed to raise a triable issue with regard to OPCA's stated fact.

(1) "[OPCA] is a non-profit corporation operating, organized and existing under the laws of the State of California." (2) "Plaintiff Evan Carolyn is not a homeowner or resident of [OPCA], does not pay assessments and is not entitled to the protections of the Association's CC&Rs." (3) "[OPCA's] trails are privately owned as common area of the Association and are operated by a Board of Directors . . . ."[2] (4) "Under Article IV, Section 1 of the Association CC&Rs, 'each member of the Association has a right and easement of access, use and enjoyment in and to the Common Area and such easement shall be appurtenant to and shall pass with the title to every Lot subject to assessment.' " (5) "The Arena and Trails Committee made recommendations to the Association Board of Directors for ways to remedy dangerous conditions on the Association's trails."[3] (6) "[OPCA] is a private entity which funds the

---

[2] While the larger trail system to which OPCA's trails connect is owned in part by Orange County and in part by other associations and municipalities, the OPCA trails over which OPCA exercises control are owned by OPCA.

[3] Carolyn raised a triable issue of fact with regard to the extent of OPCA's investigation of safety issues and damage to the trail fences, as well as "whether or not dangerous conditions existed, and if so, what means" were reasonable to remedy such conditions. But it is undisputed that OPCA implemented the written recommendations of its Arena and Trails Committee by installing posts in the ground on the trails.

maintenance and operation of its Common Area through monthly assessments paid by the Residential Lot Owners."

*Carolyn's Additional Material Facts*

Carolyn did not "set forth plainly and concisely any other material facts" he contended were disputed (i.e., by separately listing additional disputed facts in his separate statement). (Code Civ. Proc., § 437c, subd. (b)(3).) Nevertheless, we set forth herein the relevant evidence submitted by Carolyn bearing on the question of whether OPCA's trails are "public accommodations."

Of primary importance to Carolyn's opposition is certain deposition testimony. Utilizing leading questions, counsel for Carolyn elicited key admissions from OPCA representatives at their depositions. An OPCA director admitted that "[t]he OPCA board doesn't know who actually takes the trail on a daily basis," "there's no security guard at the front of Orange Park Acres or [OPCA] that checks everyone in and takes IDs when they come in to" the community of Orange Park Acres, and the OPCA trail system is "open to the public." The same director agreed with the following hypothetical question: "Anyone in Southern California who knows where the OPCA trail system is could put their horse in the trailer, drive over to Orange Park Acres park, unload the trailer, saddle up the horse and go for a ride on the OPCA trails." A second OPCA director admitted "a rider could ride from someplace well outside the OPCA trail system onto . . . the OPCA trails readily" and "[t]he OPCA trails are really open to the public in terms of access." A member of the OPCA Arena and Trails Committee admitted, "people other than just the residents of OPCA ride horses on the OPCA trail system" and "the OPCA trail system is a system that can be accessed by a member of the public at any time."

Carolyn also relied on several declarations in support of his opposition papers and Carolyn's summary judgment motion. Cheryl A. Skigin, one of Carolyn's attorneys, declared she has owned a home and lived in the Broadmoor-Saddlehill subdivision since 1999, and that she has lived in Orange Park Acres since 1991. Construed liberally, Skigin's declaration indicates she and others she knows (who are not members or residents of OPCA) have ridden horses on "trails which are the subject of this litigation" since 1991 (the declaration is not clear as to whether the "trails which are the subject of this litigation" are OPCA's trails or the interconnected "trail system" into which OPCA's trails feed). Skigin also attests: "There is no

distinction between where the trails which are within the Broadmoor-Saddlehill development begin and where the trails which are part of the County of Orange, City of Orange end or commence. Certain trails, such as the trail referred to as Pig Trail border both Broadmoor-Saddlehill and the property in the unincorporated portion of Orange County, the City of Orange and potentially other developments within the Orange Park Acres area. The trails are integrated and form a network."

The remainder of Skigin's declaration, as well as the declaration of Carolyn's other attorney, B. Paul Husband, relates to the issue of whether the OPCA trails affect interstate commerce as required to invoke the applicability of the ADA. As discussed in the analysis below, we do not reach the question of whether the trails affect interstate commerce. Thus, we need not lay out in detail Carolyn's evidence attempting to establish this component of his ADA claim. Nor need we wrestle with whether the court properly sustained evidentiary objections to the Skigin and Husband declarations. Even if the evidence is allowed, our analysis is unaffected.

Although Carolyn's declaration was not specifically submitted in opposition to OPCA's motion, we set forth pertinent portions to assist us in our review. "At this time, I am too weak from a muscular standpoint, and my balance is too poor to ride a horse. It is now too difficult for me to maintain my grip with my legs if I were to try to ride astride a horse, plus I cannot maintain my balance sufficiently to ride." "I would like to participate in an equestrian sport by means of riding in a horse-drawn carriage, or some other appropriate horse-drawn vehicle. I live near Orange Park Acres, and I am aware of the [OPCA] Trail System . . . . I made plans to use the [OPCA] Trail System by means of a horse-drawn carriage in or about July 2007, but to my great dismay, I found that the trails in the OPCA Trail System were no longer available for my use because the OPCA Trail System had been blocked to use by horse-drawn carriages by means of large posts having been embedded in the ground at entrances to the Trails." "I had intended to use the OPCA Trail System two or three times per month, or more, if my health permitted." "Because of my disability, the only way that I could have access to the equestrian trails of the OPCA Trail System is in a horse-drawn carriage."

## DISCUSSION

The court found the trails did not constitute a public accommodation as a matter of law. This determination, according to the trial court, precluded Carolyn from seeking relief under any of his five causes of action. (See Code

Civ. Proc., § 437c, subd. (*o*)(1) [cause of action has no merit if "[o]ne or more of the elements of the cause of action cannot be separately established"].) Carolyn appears to concede that establishing the trails are "public accommodations" is an element of each of his causes of action, as his briefs do not argue otherwise. We will review de novo whether there is any triable issue of material fact on the classification of the trails as public accommodations. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

We *will not* address whether OPCA actually discriminated against Carolyn under any of the causes of action pleaded by Carolyn. (See 42 U.S.C. § 12182; Civ. Code, §§ 51, subd. (b), 54, subd. (a), 54.1, subd. (a).) This issue was not the subject of OPCA's motion for summary judgment and played no role in the court's grant of OPCA's motion for summary judgment. We emphasize at the outset of our analysis that the merits of Carolyn's discrimination claim (i.e., OPCA discriminated against him as a disabled person by blocking vehicle access to the trails) should be kept separate from the issue of whether OPCA's trails are a public accommodation. It is also unnecessary to reach the question of whether the trails affect interstate commerce. The court did not grant summary judgment to OPCA on that ground and the state law causes of action cannot be decided with regard to the trails' effect (or lack thereof) on interstate commerce.

*Public Accommodation*

Title III of the ADA[4] provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of *any place of public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a), italics added.)

■ Under the ADA, "[t]he phrase 'public accommodation' is defined in terms of 12 extensive categories . . . ." (*PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 676 [149 L.Ed.2d 904, 121 S.Ct. 1879].) Two of the 12 public accommodation categories listed in the ADA are arguably applicable to the OPCA trails: "The following private entities are considered public accommodations . . . , if the operations of such entities affect commerce—" "a park,

---

[4] "[S]tate courts have concurrent jurisdiction of ADA claims." (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 744, fn. 4 [100 Cal.Rptr.2d 39].)

zoo, amusement park, or other place of recreation"; "a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." (42 U.S.C. § 12181(7).) The ADA's "legislative history indicates [the public accommodation categories] 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." (*Martin*, at pp. 676–677 [professional golf tour is public accommodation].) For instance, a private marina, which rents slips to an exclusive clientele in Marina Del Rey, is a public accommodation under the ADA even though marinas are not specifically identified by name in title III of the ADA. (*Nicholls v. Holiday Panay Marina, L.P.* (2009) 173 Cal.App.4th 966, 970–972 [93 Cal.Rptr.3d 309] [also holding "restricted access does not, by itself, make an accommodation nonpublic"].) "Whether a particular facility is a 'public accommodation' under the ADA is a question of law." (*Jankey v. Twentieth Century Fox Film Corp.* (C.D.Cal. 1998) 14 F.Supp.2d 1174, 1178 (*Jankey*).)

■ California law defines "public accommodation" in a different manner. Health and Safety Code section 19955 defines " 'public accommodation' " to mean "a building, structure, facility, complex, or improved area which is used by the general public and shall include auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers." The structural access standards promulgated in connection with Health and Safety Code section 19955 et seq. and Government Code section 4450 et seq. " 'give meaning to the public accommodation law prohibiting discrimination against the handicapped . . . .' " (*Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 520 [74 Cal.Rptr.2d 684].)

Under applicable provisions of the Disabled Persons Act (Civ. Code, § 54 et seq.), "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited . . . ." (Civ. Code, § 54.1, subd. (a)(1); see also § 54, subd. (a) ["Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, . . . public facilities, and other public places."].)

The Unruh Civil Rights Act entitles all persons, regardless of "sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation . . . to . . . full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) As Carolyn has not argued otherwise, we assume, without deciding, that his Unruh Civil Rights Act claim can only proceed if the trails are deemed a public accommodation.

*Common Areas and Public Accommodations*

Stated with precision, the question presented is whether recreational common areas within a common interest development are public accommodations under the following circumstances, which are undisputed in the record before us: (1) the recreational area at issue is a fenced trail with various entry points spread over OPCA's common area; (2) the entry points include architectural barriers to access by vehicles; (3) the trails are linked to a larger web of privately owned and publicly owned trails in Orange County; (4) the OPCA trails are accessible to the general public, in that OPCA follows a custom of not precluding members of the general public from utilizing the OPCA trails; and (5) OPCA does not charge fees to members of the general public for utilizing its trails or otherwise attempt to commercially exploit the trails.

We first dispense with what might be termed a "standing" argument made by OPCA throughout its brief. Carolyn does not own property within the common interest development. As the trails are on private land owned by the members of OPCA and operated by OPCA, it is clear OPCA could bar the general public, including Carolyn, from accessing the trails if it wished to do so. (See *Liebler v. Point Loma Tennis Club* (1995) 40 Cal.App.4th 1600, 1611–1612 [47 Cal.Rptr.2d 783] [association may limit usage of tennis facilities to residents of condominiums]; Civ. Code, § 1009 [no "public recreational use" of private real property "shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently"].) The record, however, discloses no indication OPCA has ever attempted in the past or intends in the future to restrict access to its trails. If the OPCA trails are a public accommodation by reason of the public's use of the trails, OPCA may not discriminate against disabled individuals in its management of the trails, regardless of whether they are residents within the confines of the common interest development.

■ Moving to the substantive issue before us, purely residential areas of a common interest development are not public accommodations. (See *Coronado v. Cobblestone Village Community Rentals, L.P.* (2008) 163 Cal.App.4th 831, 850 [77 Cal.Rptr.3d 883] (*Coronado*) [holding residential apartment complex, including path from apartment to parking area, was not public accommodation and noting "ADA does not apply to residential facilities such as . . . condominiums"], disapproved on other grounds in *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 678 [94 Cal.Rptr.3d 685, 208 P.3d 623]; *Independent Housing Services v. Fillmore Center* (N.D.Cal. 1993) 840 F.Supp. 1328, 1344 ["The residential portions of Fillmore Center (the only portions at issue in this suit) do not themselves fall within the bounds of the ADA, since apartments and condominiums do not constitute public accommodations within the meaning of the Act."].)

Conversely, commercial real estate open to the public qualifies as a public accommodation even though it is a part of a residence or residential development. (See *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.* (D.Md. 1999) 40 F.Supp.2d 700, 705–706 [denying summary judgment in part because model unit at real estate development could be public accommodation if found to be sales office]; 28 C.F.R. § 36.207(a) (2009) ["When a place of public accommodation is located in a private residence, the portion of the residence used exclusively as a residence is not covered by this part, but that portion used exclusively in the operation of the place of public accommodation or that portion used both for the place of public accommodation and for residential purposes is covered by this part."].)

The instant case deals solely with recreational common area space within a common interest development, not residential space. Two recent California cases provide some guidance in resolving whether the OPCA trails are "public accommodations." (*Birke v. Oakwood Worldwide* (2009) 169 Cal.App.4th 1540 [87 Cal.Rptr.3d 602] (*Birke*); *Coronado, supra*, 163 Cal.App.4th 831.)

In *Birke*, the trial court sustained defendant Oakwood's demurrer to a complaint which alleged, inter alia, that Oakwood violated title III of the ADA by failing to limit secondhand smoke in the outdoor common areas at the residential complex where plaintiff Birke lived. (*Birke, supra*, 169 Cal.App.4th at pp. 1543–1546.) The common areas at issue included swimming pools and a playground. (*Id.* at p. 1553.) The *Birke* appellate court affirmed the trial court's order sustaining the demurrer without leave to amend as to Birke's ADA claim, finding persuasive the "contention that the ADA does not apply to apartments and condominiums" and also citing the dearth of specific facts alleged in the operative complaint. (*Birke*, at p. 1553.)

Presiding Justice Perluss wrote a separate opinion in *Birke*, dissenting with regard to the majority holding that Birke did not adequately plead a cause of action under the ADA. (*Birke, supra*, 169 Cal.App.4th at pp. 1553–1556 (conc. & dis. opn. of Perluss, P. J.).) In addition to questioning whether Oakwood's housing complex might constitute "transient lodging" (like boarding houses, dormitories, resorts, hotels, motels, and inns) and therefore qualify as a public accommodation in its entirety, Presiding Justice Perluss also asserted, "the fact a facility such as an apartment complex itself may not fall within the ADA's statutory definition of 'public accommodation' does not mean the site may not contain one or more of the enumerated public accommodations within its confines." (*Id.* at p. 1554.) Presiding Justice Perluss suggested the common areas at issue "are places of recreation within the meaning of title 42 United States Code section 12181(7)(L) ('a gymnasium, health spa, bowling alley, golf course, or other place of exercise or

recreation') even if the apartment complex itself is a residential property and not a public accommodation." (*Id.* at p. 1555.)

In *Coronado, supra,* 163 Cal.App.4th at page 835, plaintiff Coronado sued Cobblestone Village, the apartment complex where Coronado resided. Coronado claimed the existence of a raised curb rather than an access ramp on the path outside his apartment leading to the parking lot was a violation of the Unruh Civil Rights Act and the Disabled Persons Act. (*Coronado,* at p. 835.) "The apartments and common areas around the [Cobblestone Village] apartments are reserved for use by tenants and guests of tenants only, although other persons might enter the complex since defendants' employees do not patrol the grounds. Vehicles are able to enter the apartment complex by means of a private driveway that connects with [a public street] and winds through the interior of the complex." (*Id.* at p. 836.) The *Coronado* trial court, on its own motion during trial, dismissed the Unruh Civil Rights Act and Disabled Persons Act claims, explaining that the residential areas of the apartment complex (not including the leasing office) were not public accommodations. (*Coronado,* at p. 838.)

The *Coronado* appellate court affirmed after finding the sidewalk/parking lot common area outside Coronado's apartment was not a public accommodation under the ADA and was not an area used by the general public subject to the structural access standards of Health and Safety Code section 19955 et seq. and Government Code section 4450 et seq. (*Coronado, supra,* 163 Cal.App.4th at pp. 845–851.) Of note to the dispute here, the *Coronado* court explained: "[T]he ADA should be reasonably construed and applied in accordance with this intent. This means that, where there is a multiuse facility in which there is a commercial office open to the general public but also residential and common areas that are not open to the general public, it is appropriate to consider the particular area in question when attempting to determine the applicability of ADA structural access standards or other ADA requirements." (*Id.* at p. 851.)

In sorting through whether OPCA's trails are "public accommodations," we also find *Jankey, supra,* 14 F.Supp.2d 1174, to be instructive. In *Jankey,* the court granted summary judgment to the defendant film studio with regard to plaintiff Jankey's disability discrimination claim under title III of the ADA; the court dismissed Jankey's state law claims. (*Jankey,* at p. 1176.) Jankey, an occasional guest at the studio, alleged the studio's commissary, studio store, and onsite ATM were public accommodations. (*Id.* at p. 1177.) Defendant argued these facilities (which would obviously be public accommodations in other contexts) were not public accommodations because they were located on the studio lot, which was open only to employees of defendant or its affiliates and their authorized business guests. (*Id.* at p. 1180.)

■ In its analysis, the *Jankey* court recognized, " '[m]any facilities that are classified as public accommodations are open only to specific invitees.' " (*Jankey, supra,* 14 F.Supp.2d at p. 1178.) The court then identified several factors to aid its task of identifying whether the studio's facilities were a "public accommodation." "Among the factors the court considers in determining whether a facility is genuinely 'private,' and therefore exempt, are the following: the use of the facilities by nonmembers (or nonemployees, in the commercial context); the purpose of the facility's existence; advertisement to the public; and profit or non-profit status. [Citation.] Under the first factor, use by nonmembers (or nonemployees), the court may consider 'the extent to which [the facility] limits its facilities and services to [employees] and their guests.' [Citation.] 'Regular use' or 'indiscriminate use' by nonmembers (or nonemployees) contradicts private status." (*Id.* at p. 1179.) Although these factors were identified and applied in a different context, we think the factors also have utility in the context of determining whether common areas in a common interest development are "public accommodations."

The Department of Justice addressed the general issue before us in a 1992 letter drafted in response to a citizen's request for information about the ADA's applicability to a "clubhouse" at his "housing development": "The ADA does not apply to strictly residential facilities. Assuming your housing complex is strictly residential and would not be considered a social service center establishment, whether the ADA applies to the clubhouse *depends on who is entitled to use the clubhouse.* If activities in a clubhouse within a residential complex are intended for the exclusive use of residents and their guests, the facility is considered an amenity of the housing development. It would not be considered a public accommodation subject to the accessibility requirements of the ADA . . . . [¶] If the clubhouse facilities and activities are made *available to the general public for rental or use, they would be covered by the ADA.* Once covered by the ADA, the owners or operators of the clubhouse would be required to remove architectural barriers to accessibility if their removal is readily achievable, that is, without much difficulty or expense." (Dept. of Justice, Office on the Americans with Disabilities Act, technical assistance letter, No. 202-PL-118 (Sept. 11, 1992), italics added.)

■ The Attorney General of California answered a similar question in much the same fashion in 1982: "We are asked whether a recreation building in a mobilehome park is a 'public accommodation or facility' within the meaning of [Health and Safety Code section 19955]. We conclude that a recreation building in a mobilehome park is not a 'public accommodation or facility' within the meaning of section 19955 so as to be required to be accessible and usable by handicapped persons." (65 Ops.Cal.Atty.Gen. 72, 72–73 (1982).) "To be brought within the ambit of section 19955 a facility must be *public* . . . . [T]he recreation building just does not have the characteristics and incidents of being public that section 19955 not only

contemplates but specifically requires." (*Id.* at p. 74.) "Undoubtedly [a recreation building] is open to a more general class than the residents of the park, for surely it is available to their families and invited guests. Use by that expanded group of persons in our view, however, does not reach the use 'by the general public' spoken of in section 19955. There are still *meaningful restrictions* on who may use the facilities, which considerably narrows their [availability] to the public—[unlike] an auditorium, hospital, theater, restaurant, hotel, motel, stadium or convention center . . . . Furthermore, unlike those facilities, the purpose for whose creation is based upon their being made continuously available to the general public and whose economic viability cannot survive without their being so available, the recreation center at a mobilehome park is neither so created nor dependent. Rather, it is a secondary appendage to another unit, the park itself which, like it, neither contemplates nor needs accessibility of continuous use by the general public for its sustenance." (*Id.* at p. 75.) This opinion letter also indicated the result would be different if the recreation building was used " 'by the general public.' " (*Ibid.*) The letter did not identify the precise dividing line, however, between use by the " 'general public' " and the uses specified in the letter (use by residents, family, friends, and other invitees).

Several commentators come to much the same conclusion. "The [ADA] applies to 'public accommodations.' This may include facilities that are part of a common interest development, such as a sales or rental office receiving public traffic, or commercial facilities that are part of a residential project. A meeting room leased to the public for a fee is subject to the act, but not a room used only by the association members." (Hanna & Atta, Cal. Common Interest Developments: Law and Practice (2008) § 22.45.) "[I]f a community association or condominium owns, operates, or leases a swimming pool, tennis court, or other recreational facility that is open to members of the general public, then, with respect to the operation of the recreational facility, the community association or condominium would be a place of public accommodation governed by Title III of the ADA." (1 Mook, Americans with Disabilities Act: Public Accommodations & Commercial Facilities (2009 ed.) § 2.04, p. 2-60 (rel. 20-10/2008).) "A recreational facility that is open to members of the public (rather than being reserved exclusively for the use of association members and their families and guests) is probably a place of public accommodation. [¶] Other places of public accommodation that are sometimes owned, operated, or leased by associations include: [¶] Day care center; [¶] Senior citizen centers; [¶] Refreshment stands; and [¶] Meeting rooms that are occasionally rented to business or civic groups." (Ransom, *How the Americans with Disabilities Act Affects Residential Community Associations* (1993) 9 Prac. Real Est. Law. 55, 57.)

*The OPCA Trails*

■   After duly considering all of the aforesaid authorities, we conclude OPCA's trails are not public accommodations under either the ADA or California law. We agree with the premise that recreational common areas within common interest developments can be classified as public accommodations in appropriate circumstances. But we think it clear OPCA's trails would not be a public accommodation if OPCA actively excluded the general public from using the trails. Moreover, we do not think OPCA's private trails transform into public accommodations merely because OPCA does not actively exclude members of the public from using the trails. (See *Coronado, supra*, 163 Cal.App.4th at pp. 836, 845–851.)

OPCA's trails are not like the zoos, golf courses, health spas, bowling alleys, or amusement parks specifically identified as public accommodations in the ADA. (42 U.S.C. § 12181(7).) Nor are the trails like the auditoriums, hospitals, theaters, restaurants, hotels, motels, stadiums, and convention centers specifically mentioned in Health and Safety Code section 19955, subdivision (a).

Each of the examples listed in the ADA[5] and the Health and Safety Code illustrates the broader concept that places of public accommodation are places designed and intended to provide services, goods, privileges, and advantages to members of the public, usually in exchange for payment (and when not requiring payment, often motivated by some other advantage to the entity providing the accommodation, such as promoting its good will to the community). The specific statutory examples are illustrative of the types of places that constitute public accommodations, not a replacement for the requirement that the alleged public accommodation is actually an accommodation to and for the public. Indeed, even a specifically listed recreational site

---

[5] The complete list of "entities" comprising "public accommodations" under the ADA is as follows: "(A) an inn, hotel, motel, or other place of lodging . . . ; [¶] (B) a restaurant, bar, or other establishment serving food or drink; [¶] (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; [¶] (D) an auditorium, convention center, lecture hall, or other place of public gathering; [¶] (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; [¶] (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; [¶] (G) a terminal, depot, or other station used for specified public transportation; [¶] (H) a museum, library, gallery, or other place of public display or collection; [¶] . . . [¶] (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education; [¶] (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and [¶] (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation." (42 U.S.C. § 12181(7).)

(e.g., a bowling alley) would not be a public accommodation if it were built by a private individual on private land solely for the personal enjoyment of the individual and not opened to the public.

There is no evidence in the record suggesting OPCA's trails were built for anyone other than its own members. There is no evidence in the record suggesting OPCA encourages public use of its trails, through advertising or otherwise. Nor is there evidence in the record suggesting OPCA charges fees to members of the public for using the trails or benefits in other ways from the public's use of the trails. The OPCA trails are an "amenity" provided to OPCA's members in exchange for their membership and association dues, not a public accommodation. OPCA "neither contemplates nor needs accessibility of continuous use [of the trails] by the general public for its sustenance." (65 Ops.Cal.Atty.Gen. 72, *supra*, at p. 75.)

█ In coming to this conclusion, we are mindful of "the hardships suffered by individuals who have disabilities . . . ." (*Coronado, supra*, 163 Cal.App.4th at p. 851.) We do not think the result in this case, though, will have negative, wide-ranging consequences to disabled individuals seeking equal access to recreational opportunities. Our holding is consistent with applying the structural access standards mandated by state and federal disability law to homeowners associations if such associations create public accommodations within the common areas of the common interest development. For instance, a pool, park, or trail open to the public for a fee would be a public accommodation, regardless of the recreational facility's location in a common interest development. We disagree with the reasoning of the majority opinion in *Birke, supra*, 169 Cal.App.4th at page 1553, to the extent it suggests there is a bright-line rule protecting residential complexes from all liability for structural access deficiencies under the ADA. We hold only that a private property owner (here, a homeowners association) does not convert private recreational property into a public accommodation by failing to actively deny the public access to the recreational property.

We also note homeowners associations do not necessarily escape application of laws protecting disabled individuals even if its common areas are not deemed to constitute a public accommodation. Residential areas, including homeowners associations, can be (in appropriate circumstances) subject to federal and state fair housing law restrictions, which are not dependent upon a "public accommodation" finding. (See 42 U.S.C. § 3601 et seq.; Gov. Code, § 12900 et seq. (California Fair Employment and Housing Act; FEHA); Civ. Code, § 1352.5 [prohibiting restrictive covenants in common interest development declarations that violate Gov. Code, § 12955]; Cal. Code Regs., tit. 24, § 1101A.1 et seq. [housing accessibility standards applicable to multifamily dwelling units and the common areas associated therewith]; *Auburn Woods I*

*Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1584, 1598–1599 [18 Cal.Rptr.3d 669] [under FEHA, Fair Employment and Housing Commission entitled to conclude permitting severely depressed individuals to own dog was reasonable accommodation required of association, which banned dogs in its CC&R's]; *Southern California Housing Rights Center v. Los Feliz Towers Homeowners Assn. Bd.* (C.D.Cal. 2005) 426 F.Supp.2d 1061, 1066–1068 [disabled condominium resident requested special parking accommodation; court granted summary judgment to association on ADA claim because association is not "public accommodation," but found material issue of fact with regard to state and federal fair housing claims].) But Carolyn is not a member of OPCA, a resident of the grounds controlled by OPCA, or someone who has unsuccessfully attempted to procure residency within OPCA. Carolyn thus did not (and could not) bring a claim under state or federal fair housing law.

Finally, we note that classifying OPCA's trails as a public accommodation subject to the access standards of the ADA and California law could have adverse consequences for the disabled and able bodied alike. Members of the public, including disabled individuals, currently enjoy the use of OPCA's trails without charge.[6] Nonmembers of OPCA who use the trails are free riders—those on horseback quite literally so. Although there is no evidence in the record to support this observation, there are undoubtedly other owners of private property in California who tolerate trespasses upon their private recreational property. (See Civ. Code, § 1009, subd. (a)(1) ["It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use"].) It would be unfortunate if property owners (including but not limited to homeowners associations) presently inclined toward nonenforcement of their right to exclude the public from recreational areas changed their outlook because of fears of civil litigation conducted by individuals without an ownership stake in the recreational area at issue. Indeed, the most likely explanation for OPCA's neglect of its members' property rights is the cost and hassle associated with excluding nonmembers and including members. It is possible a decision contrary to that reached here could lead a previously apathetic association (or individual landowner) to invest in fences, security, access technology, and other means of excluding the public from privately owned recreational areas.

---

[6] It is unclear precisely how much benefit the OPCA trails offer to the public, in light of the nearby availability of trails owned by public entities and the limited number of individuals with the inclination and financial ability to ride horses as a means of recreation. Nevertheless, the record suggests there is some benefit to the general public in being able to access OPCA's trails.

## DISPOSITION

For the foregoing reasons, we affirm the judgment. OPCA shall recover its costs on appeal.

O'Leary, Acting P. J., and Moore, J., concurred.

A petition for a rehearing was denied October 20, 2009, and appellant's petition for review by the Supreme Court was denied December 23, 2009, S177639. Werdegar, J., did not participate therein.